CASE 84—PETITION ORDINARY—December 18.

# Kentucky Life & Accident Insurance Co. v. Franklin.

APPEAL FROM HICKMAN CIRCUIT COURT.

1. ACCIDENT INSURANCE—WEEKLY INDEMNITY—WHEN SUIT MAY BE BROUGHT.—Under an accident policy in which the insured is indemnified against loss of time "in a sum not exceeding $25 per week, or the money value of his time for such period of continuous total disability as shall immediately follow the accident and injuries aforesaid, not exceeding, however, fifty-two consecutive weeks from the time of the happening," the insured is entitled to weekly payments after satisfactory proof of the injury, and is not required to wait until his disability ceased, or until the end of a year to bring his action for loss of time.

2. CARE REQUIRED OF INSURED—PRACTICE IN CIVIL CASES.—Under the stipulation in such a policy, that the insured shall use due diligence for his personal safety and protection, he is required to use only that degree of diligence, or care, that prudent persons are accustomed habitually to use, and it is a question for the jury to say whether he was exercising such care.

3. OCCUPATION OF INSURED.—The fact that one was insured as a "grocer, with desk and counter duties," was injured while hunting, does not deprive him of the right to indemnity under the policy, unless he was following the occupation of a hunter; the language of the condition upon which the indemnity was to be reduced in the event he was injured while following another occupation, has reference to acts or things done in following an occupation, or business, and not to individual acts.

GEO. L. HUSBANDS, FOR APPELLANT.

1. The provision of the policy that the assured is to be indemnified against loss of time in a sum not exceeding $25 per week, or the money value of his time for such period of continuous total disability as should immediately follow the accident, not exceeding

fifty two consecutive weeks, means that the company will, at the termination of the total disability. or the expiration of the fifty-two weeks, if the total disability should continue that long, pay to the assured in one single payment the money value of his time while so disabled. These provisions of the policy merely prescribe the method which is adopted, to ascertain the amount of indemnity, and were not intended to fix the time of payment.

2. Under the provisions of the policy the assured is required to use due diligence for his personal safety and protection, and the evidence in this case shows that appellee carelessly and reck-lessly sat upon the fence with one, or both, barrels of his gun cocked, the least jar or shock being liable to cause it to explode, and the accident is directly traceable to that fact.

3. Appellee was at the time of the accident engaged in doing an act that placed him in a class different from that in which he was insured, and was engaged in doing an act or thing pertaining to some other occupation at the time of the accident.

E. T. BULLOCK, FOR APPELLEE.

1. The evidence shows conclusively that appellee's time was worth more than $25 per week, and that just prior to the accident he was earning that much, or more.

2. Appellee, who was insured as a grocer with desk and counter duties, did not change his occupation and become a hunter merely because he left his place of business for one day, or part of a day, and took a gun and went hunting.

3. The mere act of having and holding in one's hand, while hunting, a gun which is cocked, is not contributory negligence.

THOS. H. HINES AND THOS. G. POORE, OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE    INION OF THE COURT.

This action was brought by appellee for indemnity under an "accident" insurance policy issued to him by the appellant, in which he was insured as a "grocer, with desk and counter duties." He was seriously injured on March 24, 1894, by the accidental discharge of a shot gun in his own hands, or which fell from his own hands, while out hunting birds and other game.

The provisions of the policy are to the effect that if the

[33]

insured sustains bodily injuries, effected through external, violent, and accidental means, which alone produced death, the company would pay the wife of the insured the principal sum of $5,000. And if by such means he sustained injuries which should immediately and wholly disable him and prevent him from the prosecution of any and of every kind of business pertaining to the occupation under which he is insured, then, "on satisfactory proof of such injuries, he (shall) should be indemnified against loss of time thereby, in a sum not exceeding $25 per week, or the money value of his time for such period of continuous total disability as shall immediately follow the accident and injuries aforesaid, not exceeding, however, fifty-two consecutive weeks from the time of the happening."

There are many other provisions of the policy, but with them we are not now concerned. It is admitted that the insured was wholly disabled for many weeks, and that the means were accidental.

The suit was filed on July 3, 1894, for the weekly indemnity provided for in the policy, and sought to recover the sum of $25 per week from the date of the injury up to the filing of the petition. The defense of the company was:

1st. Under the contract, the language of which on the point involved we have quoted, the weekly indemnity was not to be paid until the expiration of the fifty-two weeks after the accident, if the total disability continued that long, or at least it was not due until such disability ceased; and, therefore, this suit was prematurely brought. This question was raised by demurrer to the petition, that pleading showing that the total disability had not ceased.

2d. That one of the conditions of the policy sued on was that the insured "would use due diligence for his personal safety and protection," whereas he had not done so; but, on the contrary, at the time of the accident "he was sitting on a fence with a double-barreled shot gun in his hands, with one or both hammers cocked, when a rail turned and he fell off and the gun was discharged, causing the injury," etc.

3d. That the plaintiff was only insured as a "grocer, with desk and counter duties," and that a condition of the policy was that "if the insured was injured or disabled while doing or performing any act or thing pertaining to an occupation classed by the company as more hazardous than the occupation under which he was insured," he should then be entitled "only to indemnity in such more hazardous class that the premium paid by him would pay for in such more hazardous class;" and that the company "has a class called a 'hunter' class, embracing all those engaged in the occupation of hunting, and which is more hazardous," etc.

And lastly, the answer called in question the value of the time of the insured. None of these defenses seem to require any very serious consideration or present any real difficulty. There is nothing whatever to indicate that the weekly indemnity was not to be paid weekly. The language clearly imports weekly payments after satisfactory proof of the injuries received, and there is no complaint here of the want of such satisfactory proof. It does not appear that vexatious suits were brought for this weekly indemnity. We think the insured did not have to wait until his disabilty ceased or until the end of a year before bringing this action for loss of time. If he had so waited he would likely have

been met with plea of limitation, based on a condition found in fine print on the back of the policy "that no action shall be maintained nor recovery had for any claim or part thereof upon or by virtue of this certificate after the lapse of six months from the death or injury of said member."

Upon making the necessary proof of injury we think he was entitled to the weekly indemnity provided for in the policy, and, in the absence of any agreement to the contrary, this should be paid to him weekly in accordance with what we think is the natural import of the language used in the policy. And this would also seem more in accord with the probable intention of the parties to the contract, and certainly more in accord with the probable needs of the injured beneficiary whose loss of time is sought to be made up to him by weekly indemnity. Further, we can not say as matter of law, that the insured was guilty of "want of due diligence for his safety and protection" on the occasion in question. This expression required of the insured no higher degree of diligence or care than prudent persons are accustomed habitually to use. The requirement is not inconsistent with mere inadvertence or with running such risks as prudent and cautious persons are in the habit of running. (Keene v. New England Accident Ass'n, 161 Mass., 149; Stone v. U. S. Casualty Co., 34 N. J. L., 371.)

It may be that prudent and cautious persons carry their guns cocked and mount places in the manner the insured did, and if so, there has been no breach of this condition of the policy. This question was properly submitted to the jury in unobjectionable instructions.

It is true, as contended, that the occupation of the insured

is stated to be that of "grocer, with desk and counter duties," but the question of whether he "was injured while doing an act or thing pertaining to the occupation of a hunter" was submitted to the jury. This was as much as the company could ask. It seems to us the language of the condition upon which the indemnity was to be reduced has reference to acts or things done in following an occupation or business and not to individual acts. So far as this clause goes a merchant, lawyer, physician, etc., might go fishing, and if drowned accidentally there might still be a recovery under the policy. (Stone v. U. S. Casualty Co., 34 N. J. L., 371; Eggenberger v. Guarantee Mutual Accident Association, 41 Fed. Rep., 172.)

Lastly, the jury's finding of value accruing to the insured from loss of time is sustained by the evidence.

Judgment is affirmed.