UNIVERSAL LIFE & ACCIDENT INSURANCE COMPANY V. CHARLIE SHAW.

No. 7906. Decided June 10, 1942.
Rehearing overruled July 15, 1942.
(163 S. W., 2d Series, 376.)

*Storey, Sanders, Sherrill & Armstrong,* of Dallas, for plaintiff in error.

The Court of Civil Appeals erred in that it practically rewrote and reformed the policy of insurance upon which the insured was relying by concluding that no premiums were ever

due and payable by the insured after the inception of her alleged disability, and during its continuance. Universal Life & Acc. Ins. Co. v. Wren, 122 S. W. (2d) 691; Guaranty Old Line Ins. Co. v. Winstead, 91 S. W. (2d) 1164; Order of Railroad Conductors of America v. Quigley, 131 Texas 4, 111 S. W. (2d) 698.

*Clifford Craig,* of Dallas, for defendant in error.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was brought by Charlie Shaw, a feme sole, against the Universal Life & Accident Insurance Company, a corporation, to recover sick benefits alleged to be due under the provisions of an insurance policy issued to her by defendant in 1928, but which the insurer wrongfully cancelled in 1931, while the policy was in full force and effect. The case was tried to a jury, and its verdict was favorable to plaintiff. However, upon motion of defendant, the trial court rendered judgment for defendant and that plaintiff take nothing by her suit, notwithstanding the verdict of the jury. Upon appeal by plaintiff, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the plaintiff. 153 S. W. (2d) 203. Defendant's application for writ of error was granted upon the question whether or not plaintiff's cause of action was barred by the statute of limitation.

The following statement from the opinion of the Court of Civil Appeals is made:

"The applicable provisions of the policy are that: 'In consideration of the payment in advance of the premium stated in the Schedule below (35c per week) ( on or before each and every Monday, * * * eighty per cent (80%) of which is for insurance against disability from sickness or accident. The Universal Life and Accident Insurance Company hereby agrees, subject to the conditions herein, to pay to the Insured (an endowment after the insured passes 69 years of age) * * * and in case of disability prior thereto from sickness or accident, to pay to the Insured the weekly benefits named in the Schedule below ($7), and otherwise provided herein, according to the terms hereof.' Among other conditions, it is provided that, '* * * except as otherwise expressly provided herein, this Policy shall become void if the weekly premiums shall not be paid according to the terms thereof. * * * Benefits will be paid for

each day that the Insured is by reason of illness necessarily confined to bed and * * * disabled from performing work of any nature, * * *. The total number of days for which benefits will be paid is limited to one hundred and eighty-two (182) days during any twelve consecutive months. After expiration of payment of 182 days benefits, the Company will continue this policy in full force and effect (provided total disability continues) until the next claim drawing date. Benefits under this clause will be paid each seven days, except when payment is for less than one week, then payment will be made at the rate of one-seventh of the weekly benefits for each day.' The paragraph relating to cancellation in part reads: 'Except within the contestable period, and then only for material misrepresentation in the application herefor, the Company will have no right to cancel the life insurance herein granted, except for nonpayment of premiums. * * * Such cancellation * * * shall be without prejudice to any claim originating prior thereto'."

The jury found: (1) That in July, 1931, an employee of the Insurance Company took from Charlie Shaw the policy in question; (2) that at that time she was confined to her bed, and was in that condition for a period of four years and ten months; (3) that all premiums on the policy had been paid to November 2, 1931; (4) that the Insurance Company's manager denied liability on the policy in August, 1931, and thereafter refused to accept premiums from Charlie Shaw or to pay the accrued or accruing weekly benefits; and (5) that the Insurance Company denied liability on the policy.

The policy provided that the premiums should be paid weekly, and in advance. All premiums due under the policy were paid to November 2, 1931; but no premium was thereafter paid. The policy also provided that, in the event the insured became sick and confined to her bed under the care of a physician, the insurer would pay her sick benefits of $7.00 per week during such illness, not to exceed 26 weeks; but during that time she would be required to pay the weekly premiums. If the illness continued beyond that period and for the remaining 26 weeks of that year, she would not receive any benefits, but would not be required to pay the weekly premiums. Should the illness continue during the second year, she would again be paid $7.00 per week for the first 26 weeks, but would be required to pay the weekly premiums during that time; and for the remaining 26 weeks she would not receive any benefits, but would not be required to pay the premiums. This procedure

would continue year after year, so long as she was sick and confined to her bed under the care of a physician. Plaintiff became sick in May, 1930, and since then has been confined to her bed under the care of a physician. She alleges that, due to two operations, she became totally and permanently disabled in May, 1932, and will be confined to her bed under the care of a physician during the remainder of her life.

In compliance with the provisions of the policy, the insurer paid to plaintiff the weekly benefits of $7.00 each week for 26 weeks, beginning May 22, 1930, and for about six weeks, beginning May 22, 1931; but since then has refused to make any further payments. Plaintiff alleges that defendant failed and refused to furnish her with sick blanks, to be filled out by her physician, and failed and refused to pay her any benefits other than those above mentioned; that while the policy was in full force and effect, with premiums paid for three months in advance, an agent of the insurer, by authority of J. O. McDonald, its local District Manager, came to her house while she was sick in bed, and without her permission or consent took from her possession the insurance policy and her receipt book; that shortly thereafter she talked with McDonald over the telephone, and was told by him that the Company had taken up her policy for the purpose of cancelling it, that the policy had been cancelled, and that the Company had repudiated its contract with her and would not thereafter consider itself liable to pay her anything under it, and that the Company would refuse to accept any premiums if tendered by her, and that she need not thereafter make any such tender. Nothing has since been paid to plaintiff, nor has she since tendered any premiums. The jury found that the conversation between McDonald and plaintiff occurred in August, 1931. This suit was filed September 2, 1936, or more than four years after plaintiff was informed that the policy had been cancelled and that the insurer had repudiated its contract with her. Except for the filing of a suit in 1935, which was dismissed for want of prosecution, plaintiff did nothing after August, 1931, until the filing of this suit. She made no further attempt to pay premiums; made no demand upon the Company for sick benefits; made no complaint that the Company had wrongfully cancelled the policy; and made no effort to inform the Company that she considered the policy in force and in effect and would hold it liable thereunder.

Charlie Shaw testified that, as a result of her affliction, she underwent two surgical operations, and remained in the hos-

pital for quite a while. Dr. Henderson treated her, and testified that he visited her professionally, first in March, 1932, and the last time in 1937; that he found on his first examination, in 1932, that she was suffering from an abscess, "which had defied all surgical intervention up to that time and has thus far"; that he saw and visited her at intervals for about five years, during which time she was confined to her bed most of the time, and should have been strictly confined to her bed. He testified that "she should remain in bed, because being on her feet aggravated the condition and made everything worse. There is no cure for her trouble that has been found." Mr. McDonald, the Insurance Company's manager, testified that he was instructed by the Company to cancel this policy; that he did not notify the insured in advance that the policy would be cancelled; that at the time of its cancellation the premiums due thereon had been paid in advance for approximately thirteen weeks. He testified as follows about the cancellation of the policy: "I know of my own knowledge why Universal Life & Accident Insurance Company wanted to get rid of Charlie Shaw's policy. She was a chronic claim-drawer, drawing claims all the time, and the financial condition of the Company at that time was very bad. That was the reason assigned to me for having the policy cancelled."

■ Where the the insurer wrongfully cancels, repudiates, or terminates a contract of insurance, the insured may elect to consider the policy cancelled and recover the value thereof; or the insured may elect to stand upon the contract and perform, or offer to perform, all of the conditions required of him, and when benefits are payable under its terms test the cancellation in a proper action on the policy. Universal Life & Accident Ins. Co. v. Sanders, 129 Texas 344, 102 S. W. (2d) 405; Southland Life Ins. Co. v. Gatewood, 115 S. W. (2d) 723, affirmed 135 Texas 177, 141 S. W. (2d) 588; Illinois Bankers Life Assurance Co. v. Payne, 62 S. W. (2d) 315; and see annotations in 48 A. L. R. 107, 107 A. L. R. 1233, 81 A. L. R. 379, and 99 A. L. R. 1171. The insured is not required to accept the renunciation and treat the contract as abandoned or annulled, but may keep it open and demand performance as and when the time for performance arrives. 10 Tex. Jur., 454; Blackman v. Crandall, 258 S. W. 1073; Greenwall Theatrical Circ. Co. v. Markowitz, 97 Texas 479, 79 S. W. 1069, 65 L. R. A. 302.

■ Plaintiff in the petition on which the case was tried elected to consider the policy in effect and to sue for all benefits that were due and payable up to the time her suit was instituted; but it is conceded that she is not entitled to collect any benefit payments that were more than four years past due when her suit was filed.

■ The Insurance Company contends that, because plaintiff paid no premiums after November, 1931, the contract of insurance had lapsed; and, therefore, the insured may not recover for any benefits under the policy after it lapsed in December, 1931. The rule in this State is that the wrongful termination, cancellation, or forfeiture of an insurance policy by the insurer, accompanied by declarations by the insurer that it will refuse to accept premiums if tendered, will excuse the further tender of premiums or assessments by the insured; and such policy will not lapse for nonpayment of the premiums. First Texas Prudential Ins. Co. v. Ryan, 48 S. W. (2d) 750, affirmed 125 Texas 377, 82 S. W. (2d) 635; Excelsior Mut. Life Ins. Co. v. Hunter (Civ. App.), 120 S. W. (2d) 905, (writ dismissed); Myers v. Jefferson Standard Life Ins. Co., 271 S. W. 217, affirmed 284 S. W. 216; 24 Tex. Jur., 870; 29 Amer. Jur., 360; and see Anno. 122, A. L. R. 396.

■ The insurer issued its policy to the insured, and the insurer and the insured contracted to fulfill the obligations of such policy. The insurer did not have the right to cancel same so long as the insured complied with its provisions. It is undisputed that the insurer undertook to repudiate its obligation and cancel its policy when the premiums had been paid thereon. The insured was to pay a certain weekly premium, and in case of disability the insurer agreed to pay the insured a certain weekly benefit. We think the object of the policy was to give to the insured a continuing security, and that the contract is divisible. In other words, when the insurer failed to comply with the terms of the contract and pay the amount due thereunder, each failure gave rise to a separate cause of action, and the insured had a right of action for each weekly benefit, each being distinct from the other; and she could have brought suit on each benefit as it became due. Rau v. American Nat'l Ins. Co. (Civ. App.), 154 S. W. 645; Williams v. Houston Cornice Works, 46 Texas Civ. App. 70, 101 S. W. 839; Racke v. Anheuser-Busch Brewing Ass'n, 17 Texas Civ. App. 167, 42 S. W. 774; Kentucky Life & Accident Ins. Co. v. Franklin, 102

Ky. 512, 43 S. W. 709; 1 Tex. Jur., p. 673, sec. 55; 1 Amer. Jur., p. 488, secs. 106 and 107. Limitation ran from the time that each weekly benefit was due, and not from the time the insurer undertook to repudiate its contract. See Williston on Con,-tracts, Vol. 6, p. 5684, secs. 2026 and 2027; Green v. Petersen, 218 N. Y. 280, 112 N. E. 746; 28 Tex. Jur., p. 174, sec. 83; 28 Amer. Jur., p. 114, sec. 142; 82 A. L. R., 317.

■ Article 5545, Revised Civil Statutes, requiring that certain suits shall be filed within two years, does not apply. This suit was based upon a written contract, and Article 5527, prescribing what suits shall be filed within four years, is applicable. The insured in this case could not, when the four years statute of limitation was invoked, recover from any benefits accruing more than four years prior to the time such suit was filed. Taylor v. National Life & Accident Ins. Co. (Civ. App.), 63 S. W. (2d) 1082; Commercial Casualty Ins. Co. v. Loper (Civ. App.), 104 S. W. (2d) 580.

■ The insurer unconditionally and positively repudiated the policy, and refused to permit the insured to make further premium payments thereunder. This action released the insured from making further tender of premiums, if the policy required her to pay them, or from offering to make them.. Yet, if the insured is entitled to collect the benefits specified in the policy, the insurer is entitled to credit such payments, if the policy requires such premiums to be paid, on the weekly benefits due under the policy. The fact that a tender of premiums or assessments is excused by a wrongful cancellation or forfeiture, does not mean that the insured is relieved of all obligation to pay such premiums or assessments as are required by the policy. If the insured wishes to abide by her contract and seeks to. enforce it, a condition of such enforcement is the payment by her of the premiums she was obligated to pay under the policy. Marcus v. National Council of Knights and Ladies of Security, 127 Minn. 196, 149 N. W. 197; Newman v. John Hancock. Mut. Life Ins. Co., 7 S. W. (2d) 1015; Wayland v. Western Life Indemnity Co., 166 Mo. App. 221, 148 S. W. 626; Marty v. Security Ben. Ass'n, 99 S. W. (2d) 132; 29 Amer. Jur., p. 362, sec. 431; 122 A. L. R., 396-398.

■ It appears from the record before us that this case was tried prior to the effective date of our new Texas Rules of Civil Procedure. It is therefore ordered. that the judgments of

the Court of Civil Appeals and of the district court be both reversed, and this cause is remanded to the district court with instructions to follow the procedure defined in McAfee v. Travis Gas Corporation, 137 Texas 314, 153 S. W. (2d) 442.

Opinion delivered June 10, 1942.

Rehearing overruled July 15, 1942.