MAINE GREEN PARTY,
Plaintiff, Appellant,

v.

MAINE, SECRETARY OF STATE,
Defendant, Appellee.

No. 98–1309.

United States Court of Appeals,
First Circuit.

Heard Dec. 10, 1998.

Decided March 2, 1999.

Gary Sinawski for appellant.

Phyllis Gardiner, with whom Andrew Ketterer, Attorney General, Thomas D. Warren, State Solicitor, and Peter J. Brann, Assistant Attorney General, were on brief for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Following the 1996 presidential election, Maine's Secretary of State informed plaintiff-appellant Maine Green Party that it was disqualified from official party status because its presidential nominee, Ralph Nader, had failed to receive at least 5% of the Maine presidential vote. *See* 21–A M.R.S.A. § 301(1)(C) (1992) (requiring, *inter alia*, previously-qualified parties [1] to receive at least 5% of the presidential vote in presidential election years and at least 5% of the gubernatorial vote in gubernatorial election years to retain official party

---

1. Under 21–A M.R.S.A. § 302(1), a party can qualify to appear on the ballot by forming around a non-party candidate for governor or president who was nominated by petition and who received 5% of the total vote in the preceding gubernatorial or presidential election, provided the candidate consents to the formation of the party around him or her. In 1994, Jonathan Carter, a registered Maine voter not enrolled in any party and nominated by petition, received 6.4% of the 1994 Maine gubernatorial vote. Subsequently, Mr. Carter consented to plaintiff qualifying as an official party "on his coattails" pursuant to § 302(1).

status). Plaintiff subsequently filed a declaratory judgment action claiming, insofar as is here relevant, that § 301(1)(C)'s presidential vote requirement violates plaintiff's First and Fourteenth Amendment rights because it effectively prohibits the formation of new political parties that lack national organizations. In due course, the parties cross-moved for summary judgment.

As developed in its summary judgment papers, plaintiff's argument was a tripartite syllogism: (1) "the backing of a nationally known and reasonably capable national party is essential for a presidential candidate of a state party if he or she is to have credibility with the voters in that state," Plaintiff's Objection to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment with Incorporated Memorandum of Law at 7; (2) Maine's presidential vote requirement has the practical effect of "prohibit[ing] the formation of third parties from within the State of Maine that have no national organization[s]," *id.* at 10, and (3) the presidential vote requirement thus forecloses the development of new political parties in Maine, as new parties will almost inevitably lack national organizations, *see id.* In presenting this argument, plaintiff also asserted that it had had no intention of fielding a candidate for the 1996 presidential election; it had only done so after learning that it faced disqualification and in the hope that Mr. Nader would receive enough of the vote to obviate the need for this litigation.

The district court referred the matter to Magistrate Judge Cohen for a report and recommendation. Magistrate Judge Cohen recommended that summary judgment be entered for the State and against plaintiff. He initially questioned the foundational premise of plaintiff's argument, reasoning that "it is possible that Maine

voters who care enough about the official status of a new political party would be willing to vote for that party's presidential candidate even if that candidate cannot win because he or she lacks a national organization or presence." *Maine Green Party v. Secretary of State*, Civil No. 96–261–B–C, Recommended Decision on Cross–Motions for Summary Judgment at 12 (D. Me. filed Dec. 24, 1997). In any event, he concluded that the presidential vote requirement was insufficiently burdensome to warrant strict scrutiny, *see id.* at 12–14 (applying Supreme Court and First Circuit case law), suggesting that "the restriction at issue here in no way regulates the organization and development of political parties," *id.* at 14–15. In declining to apply strict scrutiny, Magistrate Judge Cohen contrasted § 301(1)(C) with statutes prohibiting the governing bodies of political parties from endorsing candidates in their parties' primaries, *see Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 222–33, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (striking down such a statute), and with statutes prohibiting political parties from allowing independent voters to participate in their primaries, *see Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 213–25, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986) (similar). Applying the more lenient rational basis review, Magistrate Judge Cohen concluded that § 301(1)(C) passed constitutional muster with room to spare. *See Maine Green Party*, Recommended Decision at 14–16.

Apparently after having secured new counsel, plaintiff objected to the report and recommendation.[2] But its objection set forth an additional argument not urged in the summary judgment papers: that it would be unconstitutional to apply § 301(1)(C) to a party, like itself, which

---

**2.** Paul Manetti, Esq., filed the complaint and wrote plaintiff's summary judgment papers. Gary Sinawski, Esq., plaintiff's appellate counsel, authored the objection to the magistrate judge's report and recommendation.

The docket reflects, however, that neither Mr. Sinawksi nor his local counsel, Toby Hollander, Esq., entered an appearance in the lower court.

*chooses* to organize solely on the state and local level. We pause here to emphasize this shift in plaintiff's position. Prior to filing its objection to the report and recommendation, the thrust of plaintiff's argument, as we have said, was that it would be unconstitutional to apply § 301(1)(C)'s presidential vote requirement to a new party, like itself, that lacked the resources to support a national organization. In contrast, plaintiff's objection for the first time suggested that plaintiff's lack of a national organization was instead an outgrowth of the party's philosophical commitment to operate only on the state and local level. The district court, facing time constraints related to the then-upcoming 1998 primary elections, accepted the magistrate judge's recommended disposition without commenting upon the new twist put on plaintiff's argument by plaintiff's new counsel, or even indicating whether it had given the argument plenary consideration.[3]

On appeal, plaintiff has effectively elected to develop and press only the argument that application to it of § 301(1)(C)'s presidential vote requirement unconstitutionally interferes with one of its associational first principles: to remain a solely local party. By way of elaborating this position, plaintiff further asserts before us that it has "a constitutional right to choose not to run candidates for president at all." Appellant's Brief at 13. The State, though apparently perceiving plaintiff's argumentative shift, has not presented us with a developed responsive argument; it has merely sought to distinguish *Eu* and *Tashjian*, and it has made little mention of plaintiff's asserted right not to run presidential candidates.

The distinction between the position taken by plaintiff at the summary judgment stage and the position taken by plaintiff on appeal strikes us as potentially crucial. If, on the one hand, plaintiff was unable to field a viable presidential candidate be-

cause it was new and therefore lacked the support and resources to implement a national organization, we could, at the very least, rest assured that § 301(1)(C) was operating within contemplated circumstances. The statute plainly was intended to assure that official parties be sufficiently supported. *See Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971) ("[T]here is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot."); *see also Libertarian Party of Maine v. Diamond,* 992 F.2d 365, 371–72 (1st Cir.1993) (state may properly require a political party to demonstrate continued "substantial support" among the electorate as a condition of official party status). Use of the presidential vote requirement to exclude from the ballot a party formed on a more traditional model (i.e., one that intends, at least at some point in time, to nominate candidates for all elective offices voted on within a state) but insufficiently developed at the present time to nominate a minimally viable presidential candidate would seem consonant with the statute's purpose.

If, on the other hand, plaintiff's lack of a national organization (and concomitant decision not to nominate presidential candidates) stemmed from a philosophical commitment to devote itself solely to issues with direct bearing on Maine or to nominate only candidates who could be elected to office by the Maine electorate, matters might be different. Forcing such a party to field a presidential candidate might well be regarded as a direct infringement of the party's core protected activity—an infringement that is, under relevant precedent, to be skeptically scrutinized. *See Eu,* 489 U.S. at 230, 109 S.Ct. 1013 (treating as core protected activity political party's "discretion in how to organize itself,

---

**3.** The order affirming the recommended decision of the magistrate judge merely stated that the court had made "a *de novo* determi-

nation of all matters adjudicated by the Magistrate Judge's Recommended Decision."

conduct its affairs, and select its leaders"); *Tashjian*, 479 U.S. at 224, 107 S.Ct. 544 (Constitution protects a party's "determination ... of the structure which best allows it to pursue its political goals").

We come, then, to our fundamental problem: the argument plaintiff presses on appeal was not timely asserted in the district court, *see Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir.1998) ("The district court is under no obligation to discover or articulate new legal theories for a party challenging a report and recommendation issued by a magistrate judge."); *Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir.1988) (similar); *Borden v. Secretary of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir.1987) ("Appellant was entitled to a *de novo* review by the district court of the [magistrate judge's] recommendations to which he objected, however he was not entitled to a *de novo* review of an argument never raised.") (citation omitted) [4], yet the argument made to the magistrate judge is not here renewed, at least not in a developed fashion.[5]

Under the circumstances, we think the prudent course is to affirm the judgment of the district court without passing on the merits of plaintiff's appellate argument. Although the district court's boilerplate affirmance of the magistrate judge's report and recommendation does not explicitly indicate that it rejected plaintiff's "new" argument on grounds of waiver (as it would have been within its rights to do, *see Santiago*, 138 F.3d at 4; *Paterson–Leitch*, 840 F.2d at 990–91; *Borden*, 836 F.2d at 6), we think it doubtful that the court gave the argument plenary consideration, given its silence on the matter and plaintiff's utter lack of explanation for (indeed, acknowledgment of) not having advanced the argument earlier. Moreover, we have considerable doubt as to whether the summary judgment record even supports plaintiff's new position; despite a number of affidavits which stated that plaintiff was formed to participate in state and local political activities, plaintiff also filed an affidavit making clear that, during the 1996–97 time frame, a number of plaintiff's founding members were taking steps towards forming a national Green party. *See* Declara-

4. As Judge Campbell suggests, there is a citation to *Eu* and *Tashjian* in the summary judgment papers which, when read out of context and back through the lens of plaintiff's appellate argument, might be taken to have hinted at, or at least presaged, the appellate argument. Yet our careful review of the record has persuaded us that plaintiff's appellate argument was only sufficiently developed in plaintiff's objection to the report and recommendation. In so ruling, we point out that plaintiff never sought to notify the magistrate judge that the State had misunderstood its position, even though the State's summary judgment motion and opposition to plaintiff's summary judgment motion quite clearly understood plaintiff only to be arguing that its lack of a national organization was a result of its newness as a party. Nor did plaintiff either file a motion for reconsideration informing the magistrate judge that he had misunderstood its position (the magistrate judge clearly shared the State's understanding of plaintiff's position) or suggest to the district court in the objection to the report and recommendation that the magistrate judge had misunderstood its position.

5. Again, although a few sentences of plaintiff's appellate brief track points made by plaintiff in its summary judgment papers, plaintiff has presented us with neither a developed account of how the statute undermines the constitutional rights of new parties formed on the traditional model nor an explicit assessment of where the magistrate judge went wrong. Moreover, in summarizing and then introducing its appellate argument, plaintiff advertises itself as arguing only that § 301(1)(C)'s presidential vote requirement, when applied to a party, like itself, that has chosen to remain solely local, runs afoul of the Constitution. *See* Appellant's Brief at 12–13 (emphasizing that plaintiff is not claiming "that Maine's election law is inhospitable to minor parties by itself," but only that § 301(1)(C)'s presidential vote requirement is unconstitutional "as applied to plaintiff," which has "a constitutional right to organize itself solely on the local level"); *see also* Appellant's Reply Brief at 1 (asserting that plaintiff's appellate "argument" (plaintiff uses the singular) was not addressed by the State in its brief).

tion of Nancy Allen at ¶¶ 8–9. We thus believe that a remand for purposes of clarification would be an exercise in empty formalism.

Moreover, a number of the minimalist principles underlying our waiver rules support avoidance of a merits ruling in this case. *See* Cass R. Sunstein, *The Supreme Court, 1995 Term—Foreword: Leaving Things Undecided,* 110 Harv. L.Rev. 4, 6–8 (1996) (summarizing the jurisprudential underpinnings of the presumption towards decisional minimalism) (hereafter "Sunstein"). Our resolution not only avoids an unnecessary constitutional decision, *see, e.g., Three Affiliated Tribes v. Wold Eng'g, P.C.,* 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984), but it leaves undecided the constitutionality of an application of a state statute in circumstances that may well be beyond the statute's contemplation *and where we are not even certain that the State would apply it.* With respect to whether these circumstances are within the statute's contemplation, we note that the statute appears to proceed from the assumption that political parties will wish to nominate presidential candidates; we have before us no evidence of a legislative intent to keep off the ballot well-supported parties that are philosophically opposed to participating in presidential politics. *Cf.* Sunstein, 110 Harv. L.Rev. at 7 (noting a presumption against deciding and implementing a statute's hypothetical purposes). And with respect to whether the State would even apply the statute to a solely local party, we note an absence of evidence that plaintiff ever informed the State prior to its objection to the report and recommendation that it was committed to being a solely local party, or that its local character implied a commitment to abstain from nominating presidential candidates. *Cf. id.* (courts should strive to avoid rulings in areas not "ripe" for decision or where their decisions may well be advisory in fact).

In addition, our resolution avoids a merits ruling where there has been no real adverse argumentation of the point in question. *Cf. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 572, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (Souter, J., concurring in part and concurring in the judgment) ("Sound judicial decisionmaking requires 'both a vigorous prosecution and a vigorous defense' of the issues in dispute ... and a constitutional rule announced *sua sponte* is entitled to less deference than one addressed on full briefing and argument.") (citation omitted). And it does so where the costs of an erroneous ruling (a strong possibility given the lack of adverse argumentation and relevant record development) could be very high for states and for developing political parties. *See* Sunstein, 110 Harv. L.Rev. at 18–19.

Before concluding, we respond to one other point made in Judge Campbell's opinion concurring in the judgment. Although we already have explained our disagreement with Judge Campbell that the argument made in the summary judgment papers and the argument made on appeal are essentially the same, and/or that the argument made on appeal was subsumed within the argument made at summary judgment, *see supra* at 6–7, we think it important to emphasize that this is a qualitatively different situation from one where a claim made below—for example, a claim that a search was unreasonable under the Fourth Amendment—is amplified by appellate counsel with, for example, novel policy arguments never presented to the district court. The present situation involves a material shift in a *factual* position taken by plaintiff as to why it had no national organization in 1996; it is tantamount to a plaintiff arguing "I was fired because my boss didn't like me" below and then arguing "I was fired because my boss doesn't like elderly workers such as me" on appeal. We think it clear that our waiver rules ought to preclude such a shift.

*Affirmed.* No costs.

CAMPBELL, Senior Circuit Judge (concurring in the judgment).

I agree with my colleagues that the judgment below should be affirmed. I

write separately because I disagree with my colleagues' application of the waiver rule in the circumstances of this case.

My colleagues hold that appellant Maine Green Party has waived its First Amendment "associational" argument in its entirety because of a shift in the nature of the argument from the time it was first presented to the magistrate judge to the time it was argued to the district court and, now, on appeal. With respect, I believe this holding is without support in the case law and that it represents an unworkably narrow application of the conventional rule that issues not argued in the nisi prius tribunal may not subsequently be raised in reviewing courts.

It seems to me that the argument now pressed on appeal by the Green Party—that Maine's 5% presidential vote requirement violated their First Amendment associational right to choose how they wish to organize—was sufficiently presented in the first instance to the magistrate judge to avoid any question of waiver. In its original cross-motion for summary judgment, filed with the magistrate judge, the Green Party contended that Maine's 5% presidential vote requirement "infringes upon the plaintiffs' rights to organize *as they see fit.*" (Emphasis supplied.) The Party contended that it was organized in Maine around a "serious candidate for Governor" who gained the support of 33,-000 voters for "ideas and positions concerning issues of importance on the state level," and that its members "desire to achieve meaningful participation in state and local politics." In support of this argument, the Green Party cited the controlling Supreme Court precedent, to wit, *Eu v. San Francisco County Democratic Central Com.,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) and *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986), and asserted that "[t]o disqualify the Party because it has no national organization and no serious candidate for the presidency

thus violates the members' rights as delineated in *Eu* and *Tashjian.*"

On appeal, the Green Party and its members, citing, *inter alia, Eu* and *Tashjian,* continue to state that they want to be formed locally, and not on a national level, "either because they are too new to have a national political organization or because they choose to remain local." I see no distinction sufficient to justify application of the waiver rule between the First Amendment associational argument put to the magistrate judge and the argument now presented on appeal.

My colleagues claim a shift because the 5% presidential vote criterion (necessitating a strong nationwide presence) was initially claimed to be unconstitutionally burdensome only because the Maine party was new, while now it is said to be too burdensome because it interferes with the Green Party's philosophy favoring a local, decentralized party. It is not clear to me, however, that the arguments were ever so neatly compartmentalized; and even if the original associational argument focused less on philosophy and more on the practical difficulties of tying party status to the showing of a viable presidential candidate, I do not believe the difference in emphasis renders the present formulation a significantly different argument. Both versions expressly rest on the freedom of association guaranteed by the First Amendment. The Green Party initially claimed, and has continued to claim, that the Maine ballot access law infringes upon its members' right to organize as they "see fit." I think it is improper for us to refuse to consider the Party's current variation simply because its precursor, which invoked the same constitutional provision and precedent, emphasized the unfairness of forcing a newly-formed group to field a presidential candidate capable of attracting significant Maine support while the later version stresses the desire of the Green Party to concentrate on candidates for local offices. *Compare Caribbean Mushroom Co. v. Government Development Bank,* 102 F.3d

1307, 1309–10 (1st Cir.1996) (variation of argument amounting to a narrowing of position not a new argument).

My colleagues cite to no cases where arguments as closely intertwined as these have been treated as distinct arguments for waiver purposes. My experience with constitutional argumentation is that appellate courts are broadly tolerant of argumentative shifts so long as the underlying constitutional provision remains the same and no new facts need be found. Future litigants will not dare to replace trial counsel with more sophisticated appellate counsel if they have to fear that better-honed constitutional arguments, based on the same underlying theory, will be deemed "new" and therefore waived.[1] This is not a case in which, having sought relief before the magistrate judge under certain constitutional or statutory provisions, appellant has switched to different provisions. Nor is this a case where an argument depends upon additional factual development in the lower court. Nor does this court need to read cases different from those cited to the magistrate judge in order to address the present argument.[2] Nor do I discern any major shift in underlying theory.

The waiver concept founders here for other reasons also. I do not think that my colleagues can rely upon *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir.1988), and the other cited cases to establish that the Green Party is precluded from raising its current version of the association argument. In *Paterson–Leitch*, for example, having failed to plead or argue before the magistrate judge that it was entitled to sue as a third-party beneficiary of a construction management contract, the plaintiff attempted to assert third-party beneficiary status for the first time before the district judge, in its objections to the magistrate's recommended disposition. The district judge expressly refused to entertain the argument, finding that it had not been presented to the magistrate. We affirmed the district court's refusal.

The circumstances here are altogether different. Not only does the argument here not raise an issue fundamentally different from that previously argued to the magistrate judge, the district judge never, for that or any reason, declined to hear the present argument when made, as it was, by the Green Party. Nor did the State of Maine argue below or in this court that the Green Party's argument before the district court should be disregarded because not previously raised. It is only this court itself which, for the first time, believes that it has detected a sea-change such as to warrant our refusing to decide *both* the purported new argument *and* the original argument put to the magistrate judge.

I simply do not see how we can assume that the district judge refused or failed to consider the "new" argument. For all that appears, he fully considered it. While the district court would have been "within its rights" to refuse to consider a "new" argu-

---

**1.** Unlike my colleagues, I do not perceive a "material shift in a *factual* position taken by plaintiff." *See supra* (emphasis in original). Rather, the Green Party has refined somewhat the *theory* under which it claims Maine's 5% presidential vote requirement violates the rights of its members to freely associate, as protected by the First Amendment. The situation is altogether different from the hypothetical posited by the majority, *supra,* in which a plaintiff shifts from arguing she was fired for a proper reason ("my boss didn't like me") to arguing she was fired for a wholly improper and illegal reason ("because my boss doesn't like elderly workers such as me"). Here, there has been no such radical

shift in the Green Party's argument; it has consistently argued that its members' right to organize as they "see fit" has been violated.

**2.** Even supposing the Party is asserting a "new" argument rather than merely refining its original argument before the magistrate judge, we would not be obliged to reject deciding it. *See Nat'l Ass'n of Social Workers v. Harwood*, 69 F.3d 622, 627 (1st Cir.1995) (deciding "new" issue where issue was of constitutional magnitude, was purely legal in nature, and lent itself to satisfactory resolution on the existing record without further development of the facts).

ment, it plainly had the power to do so. The district court, it is true, adopted the magistrate judge's report; but presumably it did so because it believed the magistrate judge had adequately addressed the associational argument. This may or may not have been so—that matter would be fair game for our appellate review—but I don't see how we can read into the court's silence a refusal to decide all the arguments put to it, including the ones we now decide were waived. In the absence of any determination by the district court that the Green Party's argument was new and impermissible, and in the further absence of any contention to this effect by the State of Maine either here or below, I see no basis for our invocation of a waiver ground.

In sum, I believe that my colleagues have misapplied the waiver rule. The arguments before us are similar to those we regularly decide, requiring only research and analysis. I think that we should address on the merits all the arguments raised.[3]

I would add that if my colleagues are dissatisfied with the State of Maine's failure to answer all aspects of the Green Party's contentions on appeal, they could readily direct the State of Maine to brief further any of the points not sufficiently covered in Maine's brief.

While writing separately, I do not dissent from the court's affirmance of the judgment below. As the Supreme Court recently confirmed, the states have broad power to "enact reasonable regulations of parties, elections, and ballots to reduce election and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 356, 117 S.Ct. 1364, 1369, 137 L.Ed.2d 589 (1997). *See also Tashjian*, 479 U.S. at 217, 107 S.Ct. 544 (Constitution grants states "broad power to prescribe the 'Time, Places and Manner of holding Elections for Senators and Representatives,' Art. I. § 4, which power is matched by state control over the election process for state offices"). For substantially the reasons set forth in Magistrate Judge Cohen's well-reasoned report and recommendation, I believe that the Maine statute falls within this broad grant of authority to the states. In my view, the State of Maine, like certain other states which have taken a similar stance, is entitled to define a political party for ballot purposes as an organization that has demonstrated strength in the fielding of a presidential candidate as well as local candidates. I do not believe that the First Amendment takes away from the states the authority to adopt such a definition rooted, as it is, in our long national history in which political parties typically fit that model. While the 5% presidential vote requirement, as Magistrate Judge Cohen noted, requires that new parties like the Green party wage an "uphill battle," the Green Party remains free "to endorse whom it likes, to ally itself with others, to nominate candidates for office, and to spread its message to all who will listen." *Timmons*, 117 S.Ct. at 1371, 520 U.S. 351. Additionally, there are alternative means for its candidates to get on the ballot. In these circumstances, I discern no violation of the Green Party's associational rights.

The Supreme Court has cautioned, "[n]o bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms." *Timmons*, 117 S.Ct. at 1370, 520 U.S. 351. In the present matter, it is far from clear from existing Supreme Court precedent that the Maine law is unconstitutional. Granting the relief sought by the

---

**3.** A further aspect of my colleagues' opinion which I question is their failure to decide the part of the associational argument that they concede was put before and decided by the magistrate judge. Perhaps they believe that was abandoned and replaced by the "new," waived argument, leaving the entire appeal in limbo. It seems unusual that, merely by making a somewhat more sophisticated argument in the district court and here, the Green Party could have waived not only the new argument but the one the magistrate judge actually decided.

Green Party calls for a major jurisprudential leap—a leap having major implications not only for Maine but for many other states. In such circumstances, I think that courts of appeals should indulge the presumption of constitutionality to which state statutes and constitutional provisions are entitled, leaving to the Supreme Court, should it so desire, the creation of the innovative constitutional jurisprudence needed to warrant such a radical initiative. I accordingly concur in affirming the judgment of the district court, but on the merits rather than on the waiver ground put forward by my colleagues.