M. Diane KOKEN, as Liquidator on Behalf of RELIANCE INS. CO. (In Liquidation), Plaintiff,

v.

AUBURN MANUFACTURING, INC., et al., Defendants.

No. CIV. 02–83–B–C.

United States District Court, D. Maine.

Oct. 15, 2004.

Anthony R. Zelle, Clive D. Martin, John O. O'Brien, Jr., Robinson & Cole, Boston, MA, Edward W. Gould, Gross, Minsky & Mogul, P.A., Bangor, ME, Malcolm L. Lyons, Pierce, Atwood LLP, Augusta, ME, for M. Diane Koken, as Liquidator on behalf of Reliance Insurance Company (in liquidation), Plaintiff.

A. Cyclone Covey, Keith A. Pittman, Michael C. Castellon, Lee C. Davis, Griffin Cochrane & Marshall, P.C., Atlanta, GA, Christian T. Chandler, John D. Gleason, Curtis, Stephen E. Champagne, Patricia A. Hafener, Curtis, Thaxter, Stevens, Broder & Micoleau, Portland, ME, Bernard J. Kubetz, Eaton Peabody, Frederick J. Badger, Jr., Richardson, Whitman, Large & Badger, Bangor, ME, Theodore H. Kirchner, Norman, Hanson & Detroy, Portland, ME, for Pyro Shield Inc., Redco/O'Connor Inc., Black & Veatch Construction, Inc., O'Connor Constructors Inc., Redco Inc., dba Redco/O'Connor, Defendants.

## ORDER ON DEFENDANT BLACK & VEATCH'S MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD (DOCKET ITEM NO. 290)

GENE CARTER, Senior District Judge.

Before the Court is Black & Veatch's Motion to Supplement the Record for the Pending Motions Before the District Court (Docket Item No. 290) made before the Magistrate Judge on various dispositive motions. Defendant Auburn Manufacturing, Inc. has filed its Objection thereto (Docket Item No. 294); Defendant Inpro, Inc. has joined in the Objection (Docket Item No. 295); and Black & Veatch has responded to the Objection (Docket Item No. 298).[1]

After full briefing and oral argument before the Magistrate Judge on the various dispositive motions, Black & Veatch now seeks to supplement the record on those motions *after* the Magistrate Judge has rendered her Recommended Decision (Docket Item No. 282). Black & Veatch's specific claim is that the Recommended Decision "rested on several arguments that she [the Magistrate Judge] raised *sua sponte.*" Black & Veatch's Reply to Auburn's Response to Black & Veatch's Motion to Supplement the Record, at 3. These are asserted to be:

> First, the Magistrate [Judge] decided that Auburn's sales catalog satisfied Auburn's duty to warn. Second, the Magistrate [Judge] argued that the end user of a product had a duty to educate himself about product dangers. Third, the Magistrate [Judge] effectively struck an affidavit submitted by B & V without a motion to strike or an objection by Auburn. Fourth, the Magistrate [Judge] argued that B & V failed to designate an expert on whether [sic] 1000 degree blanket was appropriate protection for cutting operations.

*Id.* (footnotes omitted). Accordingly, Black & Veatch argues that additional facts are needed in the record in support of Black & Veatch's position on some of the issues resolved by the Magistrate Judge in the Recommended Decision. It is, in the view of the Court, of significance that the Motion is made only *after* the Magistrate Judge rendered her Recommended Decision on the dispositive mo-

---

1. There is in the Motion a request by Black & Veatch to insert into the record a page from the deposition of Perry Austin that was inadvertently omitted from its Statement of Material Facts in Opposition to Auburn's Statement of Material Facts (Docket Item No. 239). There is no objection to this request, and the subject page does not bear significantly on any of the issues now before the Court. It will be granted.

tions. The allowance of the Motion would undermine and undo the efforts of the Magistrate Judge to accomplish the resolution of the issues generated by the dispositive motions on a comprehensive record and after full written and oral argumentation as structured by counsel. It would also serve to derail the pending appellate review by an Article III Judge pursuant to 28 U.S.C. § 636(b)(1)(B) which review is sought by the Plaintiff's and Black & Veatch's own Objections to the Recommended Decision.

The First Circuit Court of Appeals, in the case of *Paterson–Leitch Company, Inc. v. Massachusetts Municipal Wholesale Electric Company,* 840 F.2d 985 (1st Cir.1988), has laid the predicate for consideration of such a motion in circumstances similar to this case:

> The role played by magistrates within the federal judicial framework is an important one. They exist "to assume some of the burden imposed [on the district courts] by a burgeoning caseload." *Chamblee v. Schweiker,* 518 F.Supp. 519, 520 (N.D.Ga.1981). The system is premised on the notion that magistrates will "relieve courts of unnecessary work." *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980). Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shifts gears before the district judge. *Cf. James v. Watt,* 716 F.2d 71, 78 (1st Cir.1983), *cert. de-*

*nied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984) (allowing amendment asserting new theory after district court dismissal "would allow plaintiffs to pursue a case to judgment and then, if they lose, to reopen the case ... to take account of the court's decision ... a practice [which] ... should not be sanctioned in the absence of compelling circumstances"). Such a fast shuffling of the orderly processes of federal litigation should not be encouraged.

*Id.* at 991. The Court there specifically observed and held that a belated argument which *could have been,* but was not, presented to the Magistrate Judge in the first instance could not be raised or asserted on appellate review of the Magistrate Judge's decision. The case also holds that an attempt to reopen the record made before the Magistrate for the purposes of the review of the Article III Judge is not to be countenanced. The Court stated:

> We hold categorically that an unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate.

*Id.* at 990–91; *accord Augusta News Co. v. Hudson News Co.,* 269 F.3d 41, 46 n. 5 (1st Cir.2001); *Florence Nightingale Nursing Servs., Inc. v. Paul Revere Life Ins. Co.,* No. 94–1757, 1995 WL 422863 (1st Cir. July 19, 1995).

 Thus I take it that "[t]he law is clear that when a dispositive motion is heard before a magistrate judge, the movant must make all ... [its] arguments then and there, and cannot later add new arguments at subsequent stages of the proceeding." *Maurice v. State Farm Mut. Auto. Ins. Co.,* 235 F.3d 7, 10 (1st Cir.2000) (citing *Maine Green Party v. Maine, Sec'y of State,* 173 F.3d 1, 4–5 (1st Cir.1999)).[2]

---

2. Black & Veatch attempts to distinguish *Pa-* *terson–Leitch,* with the observation that "B &

The record here establishes the following of germane significance in the proceedings of this case to date:

1) The pending dispositive and other motions that were the subject of the Recommended Decision were filed in the period April 29–30, 2004;

2) Responses and supplemental submissions on the motions were filed in the period May 4 to June 14, 2004;

3) The parties then engaged in procedural and discovery-related sparring and supplementation of the record on the motions throughout the period May 28 to July 2, 2004;

4) An Order entered on July 2, 2004, in response to a Motion of the parties for oral argument (Docket Item No. 217) scheduled the dispositive and several other motions for hearing and oral argument before the Magistrate Judge on July 21, 2004. The Magistrate Judge had indicated as early as June 18, 2004, that the dispositive motions would be set for hearing before her. Order (Docket Item No. 257) at 1.

5) A hearing and oral argument of over two hours duration was held before the Magistrate Judge on July 21, 2004, *see* Transcript of Proceedings (Docket Item No. 281);

6) The Report and Recommended Decision (Docket Item No. 282) of the Magistrate Judge on the dispositive and other motions was filed on August 20, 2004; and

7) In the period April 29 to August 20, 2004, there were 108 docket entries in this case. Almost all these entries relate to filings bearing upon completion of the factual record before the Magistrate Judge, requests of counsel for enlargement of time, and submission of written arguments and supporting papers on the dispositive motions.

8) The plethora of filings, authorized and unauthorized under the procedural rules, seeking to amend, emend, diminish, extend, enlarge and challenge the composition and shape of the record before the Magistrate Judge impelled her to put a stop to the excessive motion filings of counsel by entering an Order prohibiting the filing, *without advance consent of the Magistrate Judge*, of all "further motions to strike, to file unauthorized pleadings, or to obtain any other relief." Order (Docket Item No. 257)

---

V is not attempting to deal a new hand to the Court. Indeed, the bulk of B & V's support for its objections rested on record evidence that was before the Magistrate [Judge]." Black & Veatch's Reply, *supra* (Docket Item No. 298) at 2. It contends that it was improper for the Magistrate Judge to recommend a decision on the Motion on the basis of propositions which, although well within the context of the record, were not specifically articulated by Black & Veatch's opponents.

This position is without merit. The parties made the record and argued their positions on the law. The decision maker is then permitted, indeed charged, to consider the law and the evidence and make a principled resolution of the issues thereby generated. If counsel have missed a factual point subsumed in the record or the significance of that point, counsel does not, having had as fair an opportunity as did the Magistrate Judge to parse the record and consider the legal arguments that emanate from it, get to displace a completed decisional analysis by attempting to rebuild the record to correct the inadequacies of counsel's judgment. In such a procedural world, there would be no end to controversy on a given record. Counsel are charged by the adversary process under the Federal Rules of Civil Procedure, and their professional commitment generally, to take the responsibility on themselves to adequately perceive the legal arguments and positions that are implicit in the given record that they have themselves contributed to creating. *See, e.g., Maurice,* 235 F.3d at 10.

at 1. The reason for this unusual entrée by the Magistrate Judge was that:

Every time a party files a motion to strike, etc., additional time and effort is expended by all parties to respond and reply and the court cannot take a comprehensive look at this case until it stops. There are to be no further motions of any sort filed in this matter *unless given leave of the court to do so.*

*Id.* (Emphasis added). Thus is demonstrated the ability, indeed the eagerness, of the parties, including Black & Veatch, to build, by piecemeal methods, the record and to challenge its contents where advantageous to do so and thereby impede the effort to bring about a timely resolution of the motions.

The Court has conducted a painstaking and thorough review of the record, including the transcript of the hearing and oral argument of July 21, 2004, and the written submissions, more particularly those of Black & Veatch (Docket Item Nos. 189, 200, 204, 213, 214, 218–20, 233, 238–42, 244, 248–50, and 253) on the motions before the Magistrate Judge.

That review convinces the Court that Black & Veatch had more than sufficient opportunity to make whatever contribution it wished to the creation and shaping of the record before the Magistrate Judge on the dispositive and other motions dealt with by her in the Recommended Decision. The record demonstrates that its counsel were not restrained by anything in taking full advantage of that opportunity. The review also makes it crystal clear that with respect to the four points on which Black & Veatch claims it was blindsided, all of these points were points of factual and legal controversy properly subsumed in the evidentiary record, written submissions and argumentation of counsel created or put forth by the parties for resolution of the issues and were also generally encompassed by the argumentation put forth orally by the parties at the oral argument of July 21.

Further, it is clear that any alleged failure of Black & Veatch to address any of those issues, as it now wishes it had done, is due entirely to its counsel's tactical and strategic decisions in framing an approach to an adversarial presentation and not to any inadequacy or impropriety in the performance of either opposing counsel or the Magistrate Judge in addressing the record the parties had made. Finally, it is also clear that all of the four issues which underly the complaints of Black & Veatch in the Motion, in addition to being well within the ambit of the written argumentation of all of the parties and the record made by them, were clearly either alluded to in the oral arguments of July 21 or were implicit in the positions articulated by both Black & Veatch and Auburn, Inpro, and Redco/O'Connor in their statement of those positions.

Thus, the record establishes that Black & Veatch was properly "on notice," as it likes to say, of these underlying issues before the oral argument and could have moved to supplement the record before the oral argument took place. That review also convinces the Court that the present Motion is the desperate ploy of a "never-say-die" litigant done in an effort to evade the effect of the Magistrate Judge's proper resolution of the dispositive motions. It is an unprincipled effort to do so, for it proceeds in the face of a patient, considerate and massively thorough effort by the Magistrate Judge to offer all parties all of the time and opportunity they required and requested to assemble a complete record on the Motions and to articulate *ad infinitum* all their various arguments, positions,

and contentions on all the issues generated by the motions and the record so made.

The effort is also without merit. Black & Veatch's claim is that Auburn raised in brief and at oral argument issues by which it was blindsided. The record makes no such showing. *See infra* at 25–28. By the time of the hearing on July 21, 2004, the submissions of the parties fully disclosed the contentions and positions of the parties, as pointed out above. There is no prospect that Black & Veatch was genuinely taken by surprise by anything contained in the written submissions. The nuances to its record and argument that Black & Veatch now want to accomplish could clearly have been made before the hearing and argument and, in the view of the Court, should have been so made. Further, if Black & Veatch's counsel missed a point in its assembly of the record, it is not entitled to be redeemed from that lapse at the expense of the undoing of all of the effort of the other parties and the Court done in reliance on the proposition that as the Magistrate Judge took the motions under advisement, all parties had put forth fully, and supported to the best of their ability, their best positions on the motions.

It is equally clear that Black & Veatch's counsel was at the hearing and oral argument and was clearly apprised *at that time* of the evidence and arguments that it now seeks to address by supplementing the record. It had clear and ample opportunity to bring the proposed supplemental materials before the Magistrate for her consideration before she rendered her Recommended Decision on August 20, 2004, *a full month after the oral argument.* It could have done so by appropriate motion, letter, or oral request to the Magistrate Judge. This record belies entirely any reason to believe that counsel in this case, especially counsel for Black & Veatch, suffer from any lack of understanding as to how to make filings that are in the interest of their client or that they have suffered from any reticence whatever to do so. The record of the Magistrate Judge's prior practice in this case makes it clear that she would have responded positively to any such effort if timely made before her Recommended Decision was filed. In fact, Black & Veatch made no such attempt to timely present the material it now seeks to insert belatedly into the record before the Magistrate Judge.[3] Any claim explicit or implicit that it was prevented by anyone from doing so would be disingenuous.[4]

A specific and individual consideration of each of Black & Veatch's four points of complaint yields the conclusion that they are without merit.

First, Black & Veatch complains that the Magistrate Judge "decided that Au-

---

3. It is significant to note that Black & Veatch filed a Supplement to its Statement of Material Facts in Opposition to Auburn's Statement of Undisputed Material Facts (Docket Item No. 244) on June 9, 2004, shortly before the oral argument on July 21, 2004. That filing and its acceptance by the Magistrate Judge demonstrates that counsel for Black & Veatch knew how to supplement the record, took advantage of this opportunity to do so right up to the eve of oral argument, and that the Magistrate Judge took a permissive attitude to such late-in-the-day additions to the record.

4. Any suggestion that Black & Veatch was put off from doing so by the Order of June 18 prohibiting further filings is without merit. The Order was not a blanket and final prohibition. It merely required counsel to make disclosure of the purpose of the filing in order to get approval in advance of its filing. The Magistrate Judge would clearly not have regarded the Order as an impediment to a meritorious and focused motion to supplement the record for a non-futile purpose. Furthermore, Black & Veatch never attempted to get approval for such a filing.

burn's sales catalog satisfied Auburn's duty to warn." Black & Veatch's Reply (Docket Item No. 298) at 3. This objection is met by the simple observation that there is nothing inappropriate about that finding and nothing surprising about it in the context of the entire record. This decision was one made upon a general issue generated by Auburn's Motion for Summary Judgment, and there is nothing inappropriate about her drawing from the record to reach the indicated conclusion. The existence of a duty to warn and its scope and content was a central issue on the dispositive motions.

Second, Black & Veatch complains that the Magistrate Judge "argued that the end user of a product had a duty to educate himself about product dangers." *Id.* A review of the record reflects that the issue of the scope and content of the duty to warn was on the record, properly before the Magistrate Judge, and that the parties were charged with knowledge of it and failed to take appropriate positions with respect to it and its various ramifications at their own peril. The Magistrate Judge, addressing the duty to warn (*see* Recommended Decision, at 18–19), stated:

> ... [t]here is nothing inherent in a welding blanket that makes its appropriateness or dangerousness for use in a particular application obvious, in contrast with certain dangerous products such as weapons. ... On the other hand, although the maximum tolerance of a 1000–degree welding blanket would not be obvious without experience or testing, I fail to comprehend how the *danger* of using a welding blank to horizontally capture concentrated spatter and red-hot cut pieces on top of combustible materials could be anything but obvious to a user of the product.

> It strikes me as beyond question that a novice welder (or a layperson) would recognize the danger in simply assuming that a 1000–degree welding blanket just ordered from a supplier's catalog would be sufficient to horizontally capture concentrated spatter and red-hot cut pieces atop combustible materials.... But this is not a case about the typical consumer. This case presents an end user with 26 years of experience not only using welding blankets, but also experiencing fires during their use. What is more, this case presents a trade that has essentially determined that the relatively minor fires that do arise when welding blankets are used are an acceptable risk. The only reasonable assessment is that the danger of fire in a horizontal capture application atop combustible material is open and obvious precisely because no one other than a professional welder would proceed to face the danger knowing only that the blanket had a 1000–degree rating.

> The sophisticated user doctrine also bars this suit. It is well established in the law that an end user's experience with a product can foreclose the imposition of a legal duty to warn on the manufacturer..

Recommended Decision, at 18–19 (citation omitted; emphasis in original). These very points and contentions were made and discussed at length in the oral argument of July 21. Transcript of Proceedings at 71–72, 86–87. Black & Veatch's own counsel, Mr. Davis, acknowledges implicitly in the oral argument the existence of an issue about the duty to educate the using public by disavowing the assertion of any such claim *on Black & Veatch's part* in saying:

> Okay. What are we suggesting? We're not suggesting that they're supposed to go out and educate the entire work place, industry concerning which fire blanket to suggest, but what we are

suggesting[sic] that if they market something as a fire blanket or welding blanket and if it cannot stand up to that type of hot work, that they put something like this on there [about] fire danger, this welding blanket should not be used as a drop cloth . . . .

*Id.* at 88. Clearly, the issue was known to all counsel present at the oral argument, and there was no impropriety in the Magistrate Judge's decision on the issue and no one could be startled or taken unaware that she decided it.

Black & Veatch also asserts that the Magistrate Judge "effectively struck an affidavit submitted by B & V without a motion to strike or an objection by Auburn." Black & Veatch's Reply (Docket Item No. 298) at 3. In fact, the footnote cited by Black & Veatch indicates that the Magistrate "struck" nothing. The contention, by the use of the word "effectively" is an artful play on words and meaning that diverts one's attention from the reality of what was done. What the Magistrate, in fact, did was to assess the evidentiary quality of the subject affidavit as part of the record before her and to explain why she did not find its contents to be persuasive to her in deciding the issue before her. That is a task that is clearly appropriate to the fact finder's weighing of the evidence to determine if it yields a genuine issue of material fact.

Finally, Black & Veatch contends that the Magistrate Judge "argued that B & V failed to designate an expert on whether 1000–degree blanket [sic] was appropriate protection for cutting operations." *Id.* This is an apparent reference to the Magistrate Judge's statement "[n]or has Reliance or Black & Veatch designated any expert to offer an opinion to the effect that the 1000–degree blanket offered insufficient fire protection for this job." Recommended Decision, at 10. Black & Veatch

states that it "is arguing that it was *not on notice* that it needed to cite expert testimony that the 1000–degree blanket was the wrong blanket for cutting operations." Black & Veatch's Reply (Docket Item No. 298) at 6 (emphasis added).

This assertion invokes a kindergarten-level view of adversarial responsibility. It was crystal clear that the entire question of the existence of the duty to warn about hazards associated with the use of the blanket, described in the record as a 1000–degree blanket, was a central issue on Auburn's Motion for Summary Judgment. It was also clear that there was vigorous dispute and contention about the content and scope of that duty. In that context, mature and experienced counsel are, in fact, *on notice to do their professional duty.* They are charged as professionals under our system with the responsibility to recognize the content of adversarial records and discussions and must assume the responsibility to parse the record and determine on their own the tactics and factual propositions required to attempt to meet the weight of the record. They cannot expect to be led by the hand, rose-garden-like, by opposing counsel or the decision-maker through the record, and be given a seminar on what their professional duties require of them in pursuing their case.

Under the established law of this Circuit, Black & Veatch will not be permitted to reduce the Magistrate Judge process as established under 28 U.S.C. § 636(b)(1)(B) to a sham dress rehearsal. Black & Veatch is not now entitled, after all this expenditure of time and effort by the parties and by the Court, "to feint and weave at the initial hearing, and save its knockout punch for the second round." *Paterson–Leitch,* 840 F.2d at 991; *cited in Morales–Vallellanes v. Potter,* 339 F.3d 9, 19 n. 7 (1st Cir.2003).

The Motion to Supplement the Record is hereby **GRANTED** in part and without objection to permit the insertion into the record of page 44 of the deposition of Perry Austin and is, in all other respects, **DENIED.**

**SO ORDERED.**