David B. SMITH, Plaintiff,

v.

Donna E. SHALALA, Secretary, U.S. Department of Health and Human Services, et al., Defendants.

Civil Action No. 96–1244 (JR).

United States District Court, District of Columbia.

June 7, 1996.

Jonathan W. Emord, Todd A. Harrison, Emord & Associates, P.C., Washington, DC, for Plaintiff.

Kathryn Cook, Office of the Chief Counsel, Food and Drug Administration, Rockville,

**2**

MD, for Defendant Food and Drug Administration.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff David Smith suffers from an advanced stage of Hodgkin's lymphoma. He brings this action seeking an injunction "restraining the Department of Health and Human Services and the Food and Drug Administration from prohibiting" the Burzynski Cancer Institute from treating him with Antineoplastons, an experimental anti-cancer agent. Smith posits "the right of a competent terminally ill cancer patient to choose among available treatments that he or she can accept and endure," and he claims that the FDA's refusal to permit his treatment with Antineoplastons interferes with his rights to due process, equal protection, and privacy.

The court heard oral argument on plaintiff's application for a temporary restraining order on June 5, 1996. Because this matter was presented as a life-or-death emergency, the court has undertaken to decide plaintiff's preliminary injunction motion on an extremely expedited basis. For the reasons set forth below, plaintiff's motion for a preliminary injunction will be denied.

### Facts

Smith was diagnosed with Hodgkin's disease in 1993. He underwent radiation treatment, after which the cancer was in remission until it reappeared in February 1996. In March 1996, his treating physician recommended chemotherapy. Fearing the potentially severe side effects of the treatment, Smith refused.

Smith then sought out Dr. Stanislaw Burzynski of the Burzynski Cancer Institute in Houston, Texas. Dr. Burzynski recommended a course of treatment with Antineoplastons, an investigational new drug (IND) being administered in FDA-approved clinical trials pursuant to the Food, Drug, and Cosmetics Act, 21 U.S.C. § 355(i). Smith began receiving experimental treatments on April 1, 1996. He and Dr. Burzynski both now claim that the Antineoplastons treatment has been effective. Dr. Burzynski reports encourag-

ing changes in Smith's bone scans. Smith states that he has experienced a reduction in bone pain and itching.

At the time Dr. Burzynski began treating Smith with Antineoplastons he had been charged in a seventy-five count federal indictment for mail fraud, introducing an unapproved drug into interstate commerce, and violating a court order. *United States v. Burzynski et al.,* H–95–290 (S.D.Tex.1995). The district judge required, as a condition of Dr. Burzynski's pretrial release, that he stop administering Antineoplastons except with FDA approval, but he stayed that requirement pending review by the court of appeals. On April 12, 1996, in a *per curiam* order, the Fifth Circuit affirmed the district court's order imposing conditions, No. 96–20209, observing that the administration of Antineoplastons without approval of the FDA and outside FDA-approved clinical trials was unlawful, *see Trustees of the Northwest Laundry and Dry Cleaners Health & Welfare Trust Fund v. Burzynski,* 27 F.3d 153 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995).

On May 17, 1996, Dr. Burzynski notified the FDA that he was treating Smith with Antineoplastons but outside the protocols of the approved IND and requested permission to continue Smith's treatment under a "single patient exception." Such exceptions are frequently permitted to allow the administration of unapproved new drugs to patients who are not eligible for treatment in any of the clinical study protocols under an IND, but they are not granted if a patient would be subjected to an unreasonable and significant risk of illness or injury, 21 C.F.R. § 312.42(b).

By letter of May 23, 1996, Exhibit 9 to the Verified Complaint, the Acting Director of FDA's Division of Oncology Drug Products, Office of Drug Evaluation, wrote to Dr. Burzynski, expressing concern about "the large number of new patients that you have now revealed were started on Antineoplastons between February 24, 1996 and April 15, 1996 outside your INDs...." The letter responded to Dr. Burzynski's requests concerning eleven patients, granting permission to continue treatment for eight of them, seeking further information as to a ninth, and refus-

ing permission as to the tenth and eleventh, one of whom was David Smith. The letter noted that Smith had not received chemotherapy and concluded: "The administration of Antineoplastons to patients with Hodgkin's disease who have not received potentially curative chemotherapy is not acceptable. The administration of Antineoplastons in this patient should not be continued." This conclusion was consistent with FDA regulations relating to the use of investigative drugs to the exclusion of recognized curative therapy, 21 C.F.R. § 312.42(b)(1)(i).

Smith, through counsel, sought reconsideration of FDA's decision to disallow the single patient exception. By letter of May 27, 1996, Exhibit 11 to the Verified Complaint, FDA adhered to its earlier decision.

On June 5, 1996, his supply of Antineoplastons having been exhausted, Smith sought emergency relief in this Court.

**Analysis**

■ To be entitled to a preliminary injunction, Smith must demonstrate (1) that he is substantially likely to succeed on the merits of its suit; (2) that he would suffer irreparable harm in the absence of an injunction; (3) that the injunction would not substantially harm other parties; and (4) that the injunction would not substantially harm the public interest. *See, e.g., Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1505–1506 (D.C.Cir.1995); *Wagner v. Taylor*, 836 F.2d 566, 575 (D.C.Cir.1987). Preliminary relief may be granted after balancing these factors if plaintiff demonstrates a high probability of success and some injury, or *vice versa. Cuomo v. United States Nuclear Regulatory Commission*, 772 F.2d 972 (D.C.Cir.1985).

*1. Irreparable Harm*

■ Smith asserts that he will suffer and eventually die without the Antineoplastons treatments, but, of course, that proposition cannot be proven. The efficacy of Antineoplastons in the treatment of Hodgkin's disease, or any cancer for that matter, has not been scientifically established. According to Dr. DeLap at FDA, the reported changes in Smith's symptoms and on his bone scan since he began receiving Antineoplastons do not

establish that the treatments are benefitting Smith. Smith's refusal to undergo chemotherapy, a proven treatment for his illness, undermines his argument that it is the FDA's actions, rather than his own election, that will cause the injury of which he complains.

*2. Merits*

■ Smith has also failed to demonstrate a substantial likelihood of success on the merits of his claim, or any likelihood, for that matter. While there are decisions recognizing that competent adults have a fundamental right to refuse medical treatment, *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990), and to determine the time and manner of their death, free from governmental interference, *Compassion in Dying v. State of Washington*, 79 F.3d 790 (9th Cir.1996), nothing in those decisions suggests that the government has an affirmative obligation to set aside its regulations in order to provide dying patients access to experimental medical treatments. On the contrary, where courts have been presented with claims like Smith's they have refused to find a "right" to receive unapproved drugs. *See Rutherford v. United States*, 616 F.2d 455 (10th Cir.), *cert. denied*, 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980); *accord Carnohan v. United States*, 616 F.2d 1120 (9th Cir.1980). The constitutional rights to privacy and personal liberty "do not give individuals the right to obtain [unapproved drugs] free of the lawful exercise of government police power." *Carnohan, supra*, at 1122.

Even if this court were persuaded that Smith had a fundamental right to "choose among available medical treatments," as he puts it, Antineoplastons are not "available" as a matter of law. Antineoplastons have not been approved for general use by FDA. *See* 21 U.S.C. § 355(a) (prohibiting distribution of new drugs without agency approval). Their use has been approved only for limited clinical trials under agency supervision. *See* 21 U.S.C. § 355(i) (exemption from premarketing approval solely for investigative use). Dr. Burzynski's administration of Antineoplastons treatments to Smith was in contraven-

tion of the FDA protocols specified in the IND, and, at least after the Fifth Circuit's ruling on April 15, 1996, in direct violation of a federal court order.[1]

Smith also claims that the FDA's decision to exclude him from the Antineoplastons IND amounts to a denial of his right to equal protection under the law. Where an equal protection claim involves no fundamental right or suspect classification, however, a plaintiff must demonstrate that the government's decision or its classification is not rationally related to a legitimate purpose. *See e.g., Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Smith has not attempted to sustain that burden and cannot do so.

The FDA based its decision to exclude Smith from the Antineoplastons IND on the fact that Smith had not tried an available, proven treatment for his illness. That decision is supported by FDA's regulations, which require the agency to consider whether "another drug under investigation or approved for the same indication and available to the same patient population has demonstrated a better potential benefit/risk balance." 21 C.F.R. § 312.42(b)(4)(v).

The FDA's decision with respect to Smith is manifestly related, and rationally related, to furthering the agency's interest in protecting the public from the risks of medical treatments that have not been proven safe and effective. That interest is present and, if anything, heightened in cases of patients who suffer from serious, life-threatening illnesses. "[I]f an individual suffering from a potentially fatal disease rejects conventional therapy in favor a drug with no demonstrable curative properties, the consequences can be irreversible." *United States v. Rutherford,* 442 U.S. 544, 556, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68 (1979).

Smith has no fundamental right to receive Antineoplastons treatments, and FDA's decision to exclude him from its experimental treatment program is entirely rational. Smith has failed to demonstrate any likeli-

hood that he will succeed on the merits of his claim.

**Conclusion**

The court does not doubt the sincerity of Smith's desire for, or belief in, Dr. Burzynski's Antineoplastons treatment. Smith's decision to refuse chemotherapy is his decision to make. Smith has not, however, demonstrated that he is entitled to judicial intervention on his behalf and, for that reason, his application for preliminary injunction must be denied.

An appropriate order accompanies this memorandum.

## *ORDER*

For the reasons given in the accompanying memorandum, it is this 7th day of June, 1996, **ordered** that plaintiff's application for preliminary injunction is **denied.**

---

1. During oral argument on June 5, 1996, this court considered making a *sua sponte* transfer of this case to the Southern District of Texas to avoid interfering with any order of that court, but decided instead to issue a ruling on plaintiff's motion for preliminary injunction in order to give plaintiff an appealable order as quickly as possible.