**UNITED STATES of America,**

v.

**Jorge Paris LOPEZ, et al., Defendants.**

**No. CRIM. 98–189(HL).**

United States District Court,
D. Puerto Rico.

Nov. 2, 1999.

Robert W. Odasz, Carolina, PR, for Jorge Paris–Lopez, defendant.

Desiree Laborde–Sanfiorenzo, U.S. Attorney's Office, Criminal Division, San Juan, PR, for U.S.

**OPINION AND ORDER**

LAFFITTE, Chief Judge.

Before the Court is a motion by defendant Jorge Paris López ("Paris") to suppress wiretap evidence. He claims that the wiretaps at issue were obtained in violation of the strictures of Title III, 18 U.S.C. §§ 2510—2522. Specifically, he argues that in its application for the wiretap of the cellular telephone of co-defendant Edwin Cotto–Santiago, the Government failed to establish that it tried normal investigative techniques and that these techniques were unsuccessful. Accordingly, Paris asserts, the wiretap was issued in violation of 18 U.S.C. § 2518(1)(c). The wiretaps were originally authorized by Judge Fusté in a sealed miscellaneous case. *See* Misc. no. 98–063. In issuing his order, Judge Fusté relied on an affidavit by Customs agent Leo Morales which detailed the extent of the Government's investigation and information on the alleged offenses. The defendants are charged with possession and distribution of narcot-

ics, importation of narcotics, and conspiracy to commit money laundering.

Title III requires that the Government's application for a wiretap order must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This statement should establish that the government first made a reasonable good faith effort to utilize all the available other normal investigative techniques before seeking to use the intrusive tool of electronic interception of telephone calls. *United States v. London,* 66 F.3d 1227, 1237 (1st Cir.1995). A court weighing the relative intrusiveness of different investigatory techniques should do so with a practical commonsense approach. *United States v. David,* 940 F.2d 722, 728 (1st Cir.1991); *United States v. Uribe,* 890 F.2d 554, 556 (1st Cir.1989). In making this determination, the nature of the offense is an important factor. *Uribe,* 890 F.2d at 556. Drug trafficking is, by nature, "hard to pin down." *Id.* It is difficult to detect and presents formidable obstacles to identifying participants and defining their roles. Accordingly, law enforcement personnel should be afforded latitude in choosing the manner in which they investigate it. *David,* 940 F.2d at 728. Additionally, a court may consider a law enforcement agent's affirmations based upon his experience in the area investigated. *United States v. Ashley,* 876 F.2d 1069, 1072 (1st Cir.1989).

Title III was not intended to oblige the Government to run outlandish risks or even to exhaust every possible alternative before applying for wiretap authorizations. *Id.; Uribe,* 890 F.2d at 556–57; *United States v. Hoffman,* 832 F.2d 1299, 1306 (1st Cir.1987). Furthermore, the Government is not required to demonstrate that its other less intrusive investigative methods have been wholly fruitless. *Ashley,* 876 F.2d at 1072; *United States v.*

*Abou–Saada,* 785 F.2d 1, 11 (1st Cir.1986); *United States v. Montalvo,* 882 F.Supp. 230, 232 (D.P.R.1995). A court deciding whether to authorize a wiretap must be satisfied that the Government used normal investigative methods, but confronted obstacles in gathering evidence on the criminal enterprise to the extent that wiretapping had become a reasonable option. *Ashley,* 876 F.2d at 1072; *Abou–Saada,* 785 F.2d at 11. The Government's application need not prove unequivocally that without electronic surveillance the investigation will fail. Rather, the application should establish that the Government has unsuccessfully employed less intrusive means of investigation and that a wiretap "seems a suitable next step in a plausible progression." *David,* 940 F.2d at 729. An affidavit in support of the application will be sufficient if it meets the burden of showing a reasonable likelihood that alternative means of investigation would fail to expose the offenses. *Ashley,* 876 F.2d at 1073; *Abou–Saada,* 785 F.2d at 12.

Before the Court proceeds to analyze the Government's affidavit and application in the present case, it is necessary to clarify what standard should be used in making this analysis. For purposes of Paris' motion to suppress, the Court is sitting, in effect, as an appellate court reviewing Judge Fusté's decision to issue an order authorizing the wiretaps. In his motion Paris does not allege that the affidavit in support of the application suffers from factual misrepresentations. A district court considering a motion to suppress a wiretap in such a situation must take as true the facts stated in the affidavit. *Ashley,* 876 F.2d at 1073–74. The court must determine the affidavit's sufficiency on its face. *Id.* at 1074. The affidavit will be sufficient if the court issuing the order authorizing the wiretaps "could have reasonably concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed." *Id.* Thus, if an examination of the affidavit on its face indicates that the issuing court

could have reasonably so concluded, the motion to suppress must be denied. *Id.*

█ In the present case, the Government's affidavit easily meets this standard. A large part of Agent Morales' affidavit is based on information provided to him by a confidential informant who was a confidant of Cotto–Santiago. The informant told Morales about errands that Cotto–Santiago ran for the drug conspiracy; drug transactions that Cotto–Santiago was involved in; his rounds to collect drug payments; and Cotto–Santiago's statements as to how much drugs the conspiracy was selling a week. Morales also relied on another source, a cooperating defendant, who provided information on how he or she smuggled drugs for the conspiracy; how the organization laundered money; and what were the travel routes of the organization's drug couriers.

These two individuals provided Morales with substantial information. That fact, however, does not automatically mean that any request for a wiretap must be denied. The Government was not required to demonstrate that its less intrusive investigative methods were completely fruitless. *See Ashley*, 876 F.2d at 1072; *Abou–Saada*, 785 F.2d at 11. Rather, the Government had to show that less intrusive means were reasonably likely to fail and that a wiretap was the next plausible step in the investigation's progression. *See David*, 940 F.2d at 729; *Ashley*, 876 F.2d at 1073; *Abou–Saada*, 785 F.2d at 12. In his affidavit, Agent Morales offered explanations as to why less intrusive means of investigations were not likely to bear fruit. The confidential informant, although a confidant of Cotto–Santiago, did not have the same level of access to other members of the conspiracy. And even though this person was trusted by Cotto–Santiago, there were occasions when the informant was not permitted to accompany Cotto–Santiago during his work in the conspiracy. *See* docket no. 344, Affidavit of Leo Morales, ¶¶ 26, 44, 49. The affidavit also indicates that Cotto–Santiago frequently used his cellu-

lar phone to call Ivan Saenz during his activities. *Id.* ¶¶ 27, 40, 45, 47, 59, 60. Saenz was the alleged head of the conspiracy and the person to whom Cotto–Santiago directly answered. A wiretap of Cotto–Santiago's phone, thus, would enable the Government to obtain information that the informant was unable to provide.

Morales' affidavit also explained that attempted surveillance had been unsuccessful, *id.* ¶¶ 23 & 30, and that this investigative technique posed security risks owing to the locales in which the conspiracy operated, *id.* ¶¶ 70–73. Morales further explained that a grand jury subpoena of the defendants was not likely to succeed because the defendants could invoke their Fifth Amendment rights not to testify. At the same time, they would be alerted to the fact that they were the subjects of investigation. Search warrants would also pose the threat of putting the defendants on notice that they were being investigated. Moreover, the investigation did not indicate that the other defendants' homes were being used to store or hide drugs. Morales' explanations established that it was reasonably likely that alternative means of investigation would fail to expose the offenses. *See Ashley*, 876 F.2d at 1073; *Abou–Saada*, 785 F.2d at 12.

Morales also stated that, based on his experience, pen registers and toll records were insufficient to continue the investigation because drug traffickers often use telephones that are registered in the name of other individuals in order to make it difficult to keep track of their calls. He further stated that, in his experience, drug dealers rarely keep written records of their transactions. Therefore, he believed that interceptions of their phone conversations was the best means of obtaining evidence on the drug conspiracy being investigated. It was proper for the issuing court to consider Agent Morales' affirmations based on his experience in drug investigations. *See Ashley*, 876 F.2d at 1072. Additionally, the issuing court was justified in affording the investigators lati-

tude in choosing how best to continue the investigation. *See David,* 940 F.2d at 728.

It belabors the obvious to state that the investigation of drug conspiracies is dangerous work. The Government in this case did not have to take unnecessary risks in its investigation and exhaust all other less intrusive investigation techniques before seeking a wiretap. *See Ashley,* 876 F.2d at 1072; *Uribe,* 890 F.2d at 556–57; *Hoffman,* 832 F.2d at 1306. Its application contained an affidavit which properly detailed the status of the investigation. The affidavit is replete with numerous descriptions of Cotto–Santiago's use of the telephone in the course of his drug transactions. The affidavit also explains why other means of investigation would be insufficient for the investigation to progress. On its face, the affidavit was sufficient to enable the issuing court to conclude that less intrusive investigative techniques were unlikely to succeed, *see Ashley,* 876 F.2d at 1074, and that a wiretap would be the next plausible step in the progression of the investigation, *see David,* 940 F.2d at 729.

WHEREFORE, Paris' motion to suppress (docket no. 344) is hereby denied.

**IT IS SO ORDERED.**