DRN, Inc. v. Suffolk Construc. Co.    CV-99-520-JD  01/02/01

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


DRN, Inc.

        v.                              Civil No. 99-520-JD
                                        Opinion No. 2001 DNH 001
Suffolk Construction Company, Inc.
and St. Paul Fire & Marine
Insurance Co.


                            O R D E R


        The suit by DRN, Inc. arises from a dispute over payment for

subcontracting work performed on a construction project at the

University of Connecticut.  Suffolk Construction Company was the

general contractor on the project, and St. Paul Fire and Marine

Insurance Company provided Suffolk's payment bond.  DRN brings

claims against the defendants, seeking payment and other damages.

Suffolk and St. Paul move to dismiss several of DRN's claims in

the first amended complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) (document no. 18).  DRN objects.

        The court previously instructed the parties to address the

choice-of-law issue in this case.  See Order (June 5, 2000).  In

their motion to dismiss, the defendants report that the parties

stipulate that Connecticut law governs both the construction

subcontract and the payment bond, as both instruments contain a

choice-of-law provision selecting Connecticut law.  While

acknowledging that it agreed to the stipulation that Connecticut

law applies, DRN continues to refer to other states' laws and indicates that the choice-of-law question may arise again in the future. The court stated in its prior order that it could not decide a motion to dismiss without finally resolving the choice-of-law issue, and explicitly instructed the parties to address this issue. DRN has failed to present any argument that the court should apply another state's law. Therefore, the court resolves the choice-of-law issue by finding, based on the parties' stipulation, that Connecticut law applies in this case.

## Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In reviewing the sufficiency of a complaint, the court accepts "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992). The court will grant a motion to dismiss "'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Garita Hotel Ltd. P'ship,

2

958 F.2d at 17 (quoting <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

<u>Background</u>[1]

In 1997, Suffolk entered into a general contract with the University of Connecticut to construct several campus buildings. DRN entered into a subcontract with Suffolk to provide drywall work. Suffolk procured a payment bond through St. Paul that obligated St. Paul to pay Suffolk's subcontractors if Suffolk failed to pay them. The general contract provided for progress payments from the University to Suffolk, and the subcontract provided for similar progress payments from Suffolk to DRN. DRN alleges that it completed performance of its obligations under the subcontract, which included the provision of services and materials. DRN also alleges that Suffolk knowingly allowed DRN to provide additional services and materials which were not required under the subcontract.

After a dispute arose between Suffolk and DRN over payment, DRN made a notice of claim on the payment bond to St. Paul, with a copy to Suffolk. St. Paul did not pay the claim made by DRN on the payment bond. DRN alleges that Suffolk retained more money

---

[1]This summary of facts is derived from the plaintiff's complaint.

3

than it was allowed under the subcontract, and that Suffolk and St. Paul have refused to release payment due to DRN. DRN further alleges that neither Suffolk nor St. Paul has placed the disputed amount plus interest in an interest-bearing account in a Connecticut bank, as required by Connecticut statutory law.

Discussion

A. Count II – Breach of Contract (Suffolk)

The defendants move to dismiss this count only to the extent that the plaintiff requests enhanced damages for breach of contract. DRN does not object to dismissal of the request for enhanced damages in Count II.

B. Count III – Negligent Failure to Pay (Suffolk)

The defendants argue that this count should be dismissed because DRN has not identified a recognized duty of care that Suffolk has breached, beyond any contractual or quasi-contractual duties. Under Connecticut law, causes of action in both contract and tort may be brought based on the same underlying facts, as long as there is no double recovery. See Welty v. Criscio, 2000 WL 728678, at *5-8 (Conn. Super. Ct. May 22, 2000) (discussing cases); Dean v. Hershowitz, 177 A. 262, 266 (Conn. 1935). However, as DRN concedes, a cause of action grounded in

4

negligence requires that the defendant breach a duty of care to the plaintiff. See Dean, 177 A. at 266. DRN does not allege a breach of a duty of care in the performance of the contract, or a breach of a duty arising from the parties' relationship to each other.[2] Cf. id. Instead, DRN bases this count on Suffolk's negligence in failing to pay, a duty which is purely contractual. Furthermore, DRN does not cite any cases recognizing a tort of negligent failure to pay. Count III is therefore dismissed.

### C. Count IV or V – Unjust Enrichment or Quantum Meruit (Suffolk)

The defendants argue that either the unjust enrichment or quantum meruit claim must be dismissed because the two claims are redundant. DRN contends the two claims are different because the unjust enrichment claim seeks the amount by which Suffolk has been unjustly enriched, while the quantum meruit claim seeks the amount DRN claims to have earned.

Unjust enrichment and quantum meruit both are equitable, quasi-contractual doctrines grounded in the principle of restitution, and are applicable only where there is no express

---

[2]DRN argues that the "public aspect" of the general contract with the University of Connecticut raises a tort issue. However, DRN does not articulate how this "public aspect" creates a duty to pay that is separate from Suffolk's contractual duty.

contract.  See Burns v. Koellmer, 527 A.2d 1210, 1215 (Conn. App. Ct. 1987).  "[U]njust enrichment has been the form of action commonly pursued in this jurisdiction when the benefit that the enriched party receives is either money or property. . . . Quantum meruit, by comparison, is the form of action which has been utilized when the benefit received was the work, labor, or services of the party seeking restitution."  Id. at 1215-16.  DRN alleges that it provided both services and materials to Suffolk under the subcontract and outside the subcontract.  Therefore, DRN may proceed under both claims.  Cf. Lefevre v. L.K. Constr., 1999 WL 162810, at *3 (Conn. Super. Ct. Mar. 1, 1999) (dismissing unjust enrichment claim where no goods or money were supplied by plaintiff).

D.    Count VII - Interference with Rights Under Payment Bond
      (Suffolk)

DRN alleges that Suffolk tortiously interfered with DRN's rights under the payment bond by providing inaccurate or incomplete information to St. Paul and influencing St. Paul's decision not to pay on the payment bond.  Suffolk argues that it cannot be accused of tortious interference with its own contract with St. Paul.  Suffolk also argues that DRN has failed to allege an improper motive by Suffolk.  DRN contends that it has alleged

6

sufficient facts to state a claim of tortious interference, and that Suffolk has tortiously interfered with the rights DRN enjoys as a third-party beneficiary of the payment bond between Suffolk and St. Paul.

Under Connecticut law, a claim for tortious interference with a contract may not be brought against a party to that contract. See Urashka v. Griffin Hosp., 841 F. Supp. 468, 475 (D. Conn. 1994); Wellington Sys., Inc. v. Redding Group, Inc., 714 A.2d 21, 31 (Conn. App. Ct. 1998); Horner v. City of Waterbury, 2000 WL 726855, at *3 (Conn. Super. Ct. May 16, 2000); Jablonski v. Sheldon Precision Co., 2000 WL 486930, at *4 (Conn. Super. Ct. Apr. 10, 2000).[3] DRN claims Suffolk interfered with St. Paul's performance under the payment bond, a surety contract between Suffolk and St. Paul. Accordingly, this claim is dismissed.

_____

[3]Connecticut courts note one exception to this rule. If an agent of a party to a contract, acting outside the scope of his legitimate duty, uses his power improperly for personal gain, a claim for tortious interference may lie against him. See Wellington, 714 A.2d at 31; Horner, 2000 WL 726855, at *3; Jablonski, 2000 WL 486930, at *4. DRN makes no such allegations.

7

E.    Counts XII and XIII- Failure to Comply with Duties of Bond
      Issuer, and Negligent Failure to Investigate (St. Paul)

In these two claims, DRN alleges that St. Paul negligently
failed to properly investigate DRN's claim made on the payment
bond and to pay DRN the amount Suffolk owes.  The defendants
argue that the payment bond is a surety contract, not an
insurance contract, and that St. Paul is not obligated to fulfill
the same duties as an insurer.

The parties do not dispute that the payment bond between St.
Paul and Suffolk is a surety contract.  DRN asserts that a surety
contract is a form of insurance and is subject to the laws of
insurance.  However, a surety contract is not the same as an
insurance contract.  See Blakeslee Arpaia Chapman, Inc. v. United
States Fid. & Guar. Co., 1994 WL 76383, at *8 (Conn. Super. Ct.
Mar. 4, 1994).  Therefore, sureties are not automatically subject
to the same legal obligations as insurers.  The question is
whether a cause of action for negligent failure to investigate a
claim or to pay, without an allegation of bad faith, may lie
against a surety.  While a surety may owe a duty of good faith
and fair dealing to a bond obligee, see Blakeslee, 1994 WL 76383,
at *11, DRN cites no authority, and the court has found none,
that recognizes a cause of action under Connecticut law against a
surety for negligent failure to investigate or pay, absent bad
faith.  Consequently, counts XII and XIII are dismissed.

8

F.   Count XIV - Violation of Statutory Fair Dealing Laws
     (Suffolk and St. Paul)

DRN brings claims against the defendants under the "statutes and regulations" concerning fair dealing requirements.  DRN does not specify in its complaint under which statutes its claims arise.  To the extent DRN brings claims under statutes of states other than Connecticut, the underlying allegations are contractual in nature, and the claims are dismissed as a result of the parties' stipulation that the law of Connecticut applies both to the subcontract and payment bond.  Cf. Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609-10 (1st Cir. 1993) (interpreting Massachusetts law).

The defendants' motion and the plaintiff's objection identify the relevant Connecticut fair dealing statute as the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq.

> It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the "cigarette rule" by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise--in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair

9

> because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Devel. Corp., 717 A.2d 77, 99-100 (Conn. 1998) (alterations in original) (citations and internal quotations omitted).

The defendants argue that an allegation of breach of contract alone does not establish a CUTPA violation. Connecticut courts generally refuse to allow a CUTPA claim based on a mere breach of contract, instead requiring the plaintiff to further explain how the defendant's conduct was "immoral, unethical, unscrupulous or offensive to public policy." Boulevard Assocs. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1039 (2d Cir. 1995); see Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc., 595 A.2d 951, 954 (Conn. Super. Ct. 1991); cf. Lester v. Resort Camplands Int'l, Inc., 605 A.2d 550, 557 (Conn. App. Ct. 1992) (allowing CUTPA claim based on unilateral breach of contract with group of consumers). DRN's breach of contract claim does not include allegations of immoral or offensive behavior that might support a CUTPA cause of action.

In addition to the common law breach of contract claim, DRN brings statutory claims against Suffolk for withholding excess payment from DRN and failing to place the disputed amount into escrow, and against St. Paul for enforcement of the payment bond.

10

<u>See</u> Conn. Gen. Stat. Ann. §§ 49-41a, -41b, -42 (West, WESTLAW through Jan. 1, 2000).[4]  DRN argues that the allegations pertaining to violations by Suffolk of § 49-41a and § 49-41b surpass a mere breach of contract and provide a basis for a CUTPA claim.

The Connecticut Supreme Court has held that "CUTPA may authorize a cause of action that builds upon the public policy embodied in specific statutory provisions, [but] such a CUTPA claim must be consistent with the regulatory principles established by the underlying statutes." <u>Mead v. Burns</u>, 509 A.2d 11, 19 (Conn. 1986).  DRN cites no authority to support its argument that a violation of either § 49-41a or § 49-41b may support a CUTPA claim.  Its allegation that Suffolk violated these statutes knowingly is not sufficient to establish an unfair trade practice of the kind CUTPA was intended to address.

Furthermore, while some Connecticut Superior Court opinions have held that a violation of § 49-42 may form the basis for a CUTPA claim, DRN does not make this argument, nor does the

---

[4]Section 49-41a provides that a general contractor, upon written demand of a subcontractor and after receiving a notice of claim, shall place the disputed amount into an escrow account in Connecticut.  Section 49-41b specifies how much payment a general contractor may withhold from a subcontractor.  Section 49-42 provides for enforcement against a surety of a right to payment on a payment bond.

Connecticut Supreme Court appear to have adopted this position. See Premier Roofing Co. v. Ins. Co. of North Am., 1995 WL 107186, at *5 (Conn. Super. Ct. Mar. 3, 1995) (allowing CUTPA claim based on combined allegations that general contractor failed to pay subcontractor and failed to comply with notice requirements of § 49-42); Blakeslee, 1994 WL 76383, at *9-11 (allowing CUTPA claim based on alleged failure to pay on a payment bond). Again, DRN's allegations do not describe the kind of conduct addressed by CUTPA. Therefore, DRN is not permitted to maintain a CUTPA claim.

## Conclusion

The defendants' motion to dismiss (document no. 18) is granted in part, as follows: the request for enhanced damages in Count II is dismissed, and counts III, VII, XII, XIII, and XIV are dismissed. The motion is otherwise denied.

The court notes that the present complaint appears to take a scattershot approach which courts disfavor. See Alpha Lyracom Space Communications, Inc. v. Communications Satellite Corp., 946 F.2d 168, 175 (2d Cir. 1991); Salomon S.A. v. Alpina Sports Corp., 737 F. Supp. 720, 726 (D.N.H. 1990); see also Gold v. Wolpert, 876 F.2d 1327, 1333 (7th Cir. 1989) (sanctioning counsel's scattershot approach on appeal); Max M. v. New Trier

12

High Sch. Dist. No. 203, 859 F.2d 1297, 1300 (7th Cir. 1988) (observing scattershot approach taken on appeal was "antithesis of sound advocacy").  The court expects the plaintiff to re-examine each of its remaining claims and to make a good faith effort to reduce the number of counts leaving only those counts which are necessary in order to seek a vindication of the plaintiff's rights.  This shall be done within 20 days and the plaintiff shall file a written notice with the court and defendants.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

January 2, 2001

cc:  Lawrence M. Edelman, Esquire
     Simon C. Leeming, Esquire

13