Pierce v. Metropolitan Life Ins. Co.  CV-03-435-JD  03/05/04
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Anne "Juni" Pierce

     v.                                  Civil No. 03-435-JD
                                         Opinion No. 2004 DNH 039
Metropolitan Life
Insurance Company


                        O R D E R


     On August 20, 2003, Anne "Juni" Pierce filed suit against
her insurer, MetLife, alleging that it had wrongfully stopped
making its monthly disability benefit payments to her as of
July 10, 1999.  Given the more than three years between these
two dates, MetLife has moved to dismiss the action on statute
of limitations grounds.  Pierce objects under alternative
theories: first, that MetLife's cessation of its monthly
benefit payment causes her claim to re-accrue each month the
payment was withheld, and second, that MetLife's lack of
responsiveness to her correspondence in the wake of the
termination of her benefits tolled the running of the statute.


                        Background
     The facts set forth in Pierce's complaint are as follows.
She became disabled on March 10, 1997, and remains "subject to
medical disabilities" in the form of pain and a limited range

of motion in her right knee. As the beneficiary of a policy of disability insurance issued by MetLife, Pierce began receiving a disability payment in the approximate amount of $1,600 on the 10th of each month beginning on June 10, 1997. The policy requires MetLife to continue making these payments for a certain period, depending on Pierce's age at the time she became disabled and provided she remains totally disabled within the meaning of the policy. Pierce received the last of the payments on June 10, 1999. At that point, MetLife stopped making the payments "without just cause" and "has continued to neglect, fail, and refuse to pay [Pierce] the benefits to which she is entitled." Pierce seeks both a monetary award in the form of the payments withheld by MetLife to date, plus enhanced damages and attorneys' fees, and a declaration that MetLife must resume the payments.

In opposing MetLife's motion to dismiss, Pierce submitted an affidavit which contains the following additional facts. After the payments from MetLife stopped, Pierce exercised her right under the policy to appeal the denial of further benefits. In a letter dated July 19, 1999, MetLife informed Pierce that her appeal had been denied. The letter stated that "no further administrative appeals are available to you concerning your disability benefit" and advised Pierce to

2

consult the information concerning her rights set forth in the summary plan description if she wished to pursue the matter further.

After the denial of her appeal, Pierce attempted to contact MetLife for an explanation of its reason for cutting off her benefits. Her efforts in this regard consisted largely of a series of letters sent to the insurer between January 18, 2000, and December 10, 2002. While Pierce's correspondence primarily takes issue with MetLife's stated reasons for denying her appeal, she also makes repeated requests for a response and references to the fact that one has not been forthcoming. In a letter of February 3, 2001, Pierce cites to a television news program about

> how insurance companies terminate benefits they are obligated to pay. . . . The insurance companies do not even reply to repeated requests for fair play. They just do not communicate with the person who has been denied benefits, hoping that person will give up. The only choice the person has is to hire a lawyer.

Most of Pierce's subsequent letters express an intention to hire a lawyer or go to court if MetLife does not restore her benefits.

Pierce does not claim that MetLife ever responded to any of her correspondence. Instead, she asserts that she "was never advised by MetLife that any statute of limitations was

3

running" and that she was thereby "tricked into believing that [she] was in no danger of waiving any legal rights by MetLife's silence" even though she "had specifically asked for guidance from the trustees of the benefit plan on whether [she] needed a lawyer." Pierce ultimately retained counsel and commenced suit against MetLife in Hillsborough County Superior Court on August 20, 2003. MetLife removed the case to this court on diversity grounds.

## Standard of Review

Pierce relies on materials beyond the complaint, including her affidavit and a number of attached documents, in opposing MetLife's motion to dismiss. In its reply brief, MetLife has availed itself of the opportunity to respond to these materials. Accordingly, the court will treat MetLife's motion to dismiss as a motion for summary judgment, considering Pierce's affidavit and the accompanying exhibits in making its decision. See Collier v. City of Chicopee, 158 F.3d 601, 603-604 (1st Cir. 1998).

The court may grant a motion for summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

4

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).


## Discussion

The parties agree that the statute of limitations issues presented by this case should be resolved under New Hampshire law.[1] The New Hampshire statute of limitations generally requires an action to be commenced within three years of the act or omission of which the plaintiff complains. N.H. Rev.

---

[1]Although the parties' submissions suggest that Pierce received her disability insurance through an employee benefit plan, neither argues that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., has any effect on the outcome of this motion. Cf. Bennett v. Federated Mut. Ins. Co., 141 F.3d 837, 838 (8th Cir. 1998) (applying state statute of limitations to claim for benefits under ERISA but federal law to determine when cause of action accrued).

Stat. Ann. § 508:4, I. The limitations period on a contract action begins running at the time of the alleged breach. Coyle v. Battles, 147 N.H. 98, 100 (2001); Bronstein v. GZA GeoEnvironmental, Inc., 140 N.H. 253, 255 (1995).

Pierce does not dispute that more than three years elapsed between when MetLife rejected her claim for continued disability benefits--either by stopping its monthly payments to her or by denying her appeal of that decision--and the commencement of this suit. She argues instead that her claim did not accrue upon the occurrence of either of these events because "MetLife breaches its contract each month when it fails to provide [her] with monthly benefits while [she] suffers an ongoing disability," continually resetting the statute of limitations clock.

New Hampshire follows the "universal rule that when an obligation is to be paid in installments the statute of limitations runs only against each installment as it becomes due . . . ." Gen. Theraphysical, Inc. v. Dupuis, 118 N.H. 277, 279 (1978); see also Seasons at Attitash Owners Ass'n v. Country Gas, Inc., No. 96-10-B (D.N.H. Sept. 12, 1997), available at http://www.nhd.uscourts.gov; Barker v. Strafford County Sav. Bank, 61 N.H. 147, 148 (1881) (holding that separate limitations period on claim to recover usurious

interest commenced with each loan payment); accord Berezin v. Regency Sav. Bank, 234 F.3d 68, 73 (1st Cir. 2000) (applying Massachusetts law); 9 Arthur Linton Corbin, Corbin on Contracts § 951 (interim ed. 2002).[2]

In essence, this rule treats each missed or otherwise deficient payment as an independent breach of contract subject to its own limitations period. See, e.g., Keefe Co. v. Americable Int'l, Inc., 755 A.2d 469, 472 (D.C. 2000). Accordingly, a party bringing an action on an installment contract can "recover only for those [payments] relating to the [periods] for which the applicable statute of limitations ha[s] not expired at the time plaintiff file[s] suit . . . ."

---

[2]In the interest of clarity, the court will refer to the principle described in these and like authorities as the "installment contract" rule. Although Pierce refers to the rule as the "continuing violation" doctrine, that term is generally used to denote a concept of tolling applied to employment discrimination claims. See generally Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998). To the extent Pierce actually intends to rely on this form of the continuing violation doctrine in objecting to the motion to dismiss, her reliance is misplaced. See Fuller Ford, Inc. v. Ford Motor Co., 2001 DNH 144, 2001 WL 920035, at *6 (D.N.H. Aug. 6, 2001) ("while federal law recognizes the continuing violation doctrine in the context of employment discrimination claims, the New Hampshire Supreme Court has shown no inclination to incorporate the doctrine as an exception to the [s]tate's general statutes of limitation") (internal citation and footnote omitted).

7

County of Morris v. Fauver, 707 A.2d 958, 971 (N.J. 1998); see also Gen. Theraphysical, 118 N.H. at 279 (noting that plaintiff could claim "only those payments coming due . . . within the six-year period of limitations . . .."); 9 Corbin § 951.

The parties agree that the New Hampshire Supreme Court has never considered whether the payment of insurance benefits on a regular basis constitutes an "obligation to be paid in installments" so that the date of each payment commences a separate limitations period. As a federal tribunal exercising diversity jurisdiction over the plaintiffs' state law claim, this court must predict that court's future course on this issue. See FDIC v. Ogden Corp., 202 F.3d 454, 460-61 (1st Cir. 2000). This task requires an "'an informed prophecy of what the [New Hampshire Supreme Court] would do in the same situation,' seeking 'guidance in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law.'" Walton v. Nalco Chem. Co., 272 F.3d 13, 20 (1st Cir. 2001) (quoting Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996)).

"Courts have used the 'installment contract' approach in

8

a variety of situations." Metromedia Co. v. Hartz Mountain Assocs., 655 A.2d 1379, 1381 (N.J. 1995); see also Berezin, 234 F.3d at 73 ("[a] contract need not specifically reference installments to be deemed an installment contract"); F.D. Stella Prods. Co. v. Scott, 875 S.W.2d 462, 465 (Tex. App. 1994). These situations have included the breach of a contractual duty to make a regular benefit payment analogous to the obligation which an insurer owes under a policy of disability insurance. For example, the underpayment of regular disbursements from a pension fund has generally been treated as the breach of an installment contract for statute of limitations purposes. See, e.g., Jackson v. Am. Can Co., 485 F. Supp. 370, 374 (W.D. Mich. 1980); Bauers v. City of Lincoln, 514 N.W.2d 625, 633-34 (Neb. 1994); Zalobowski v. New England Teamsters & Trucking Indus. Pension Fund, 410 A.2d 436, 438 (R.I. 1980); but see Miele v. Pension Plan of N.Y. State Teamsters Conference Pension & Ret. Fund, 72 F. Supp. 2d 88, 102-103 (E.D.N.Y. 1999) (figuring limitations period from "single alleged miscalculation" which gave rise to reduced pension payments).

Relatedly, courts have followed the installment contract approach in the case of an employer's obligation to make regular contributions to an employee benefit plan. See Bettis

v. Potosi R-III Sch. Dist., 51 S.W.3d 183, 188 (Mo. Ct. App. 2001); Jensen v. Janesville Sand & Gravel Co., 415 N.W.2d 559, 561 (Wis. Ct. App. 1987); accord Adams v. City of Detroit, 591 N.W.2d 67, 69 (Mich. App. 1998) (applying rule to employer's breach of agreement to pay retirees' periodic health insurance premiums). The Court of Claims has adopted the installment contract rule in determining the start of the limitations period on a claim for annuity payments under the military's survivor benefit plan. Nicholas v. United States, 42 Fed. Cl. 373, 376-79 (1998). Indeed, the Supreme Court has called the application of a separate limitations period to each payment in a series "the standard rule for installment obligations." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif., 522 U.S. 192, 208 (1997) (treating employer's duty to reimburse pension fund through periodic payments in satisfaction of withdrawal liability under MPPAA as installment contract).

Moreover, a number of courts have expressly held that the statute of limitations on a claim arising out of a disability insurer's cessation of regular benefit payments runs separately as to each payment. See Everhart v. State Life Ins. Co., 154 F.2d 347, 356 (6th Cir. 1946) (applying Ohio law); Aetna Life Ins. Co. v. Moyer, 113 F.2d 974, 981 (3rd

10

Cir. 1940) (applying Pennsylvania law); <u>Pac. Mut. Life Ins. Co. of Calif. v. Jordan</u>, 82 S.W.2d 250, 252 (Ark. 1935); <u>German v. Continental Cas. Co.</u>, 373 N.E.2d 1058, 1059 (Ill. App. Ct. 1978); <u>Goff v. Aetna Life & Cas. Co.</u>, 563 P.2d 1073, 1078 (Kan. App. 1977); <u>Columbian Mut. Life Ins. Co. v. Craft</u>, 185 So. 225, 228 (Miss. 1938); <u>Alsup v. Travelers Ins. Co.</u>, 268 S.W.2d 90, 94 (Tenn. 1954); <u>Universal Life & Accident Ins. Co. v. Shaw</u>, 163 S.W.2d 376, 379 (Tex. 1942); 44A Am. Jur. 2d <u>Insurance</u> § 1913 (2003). A leading treatise on contract law also endorses this view. <u>See</u> 9 Corbin § 955 ("if the insured becomes totally disabled and the insurer refuses the periodic payments, action will lie at once for each payment as it falls due. As to these the policy is an instalment [*sic*] contract.")

MetLife argues that the rule set forth in the cases from these other jurisdictions conflicts with existing New Hampshire law, under which the statute of limitations starts running "when [an] insurer reject[s] the insured's claim for benefits." MetLife relies on <u>Metro. Prop. & Liab. Ins. Co. v. Walker</u>, 136 N.H. 594 (1993), for this proposition. It is true that the court in <u>Walker</u> held that the statute of limitations on a claim for underinsured motorist coverage began running on the day the insurer denied the request for coverage. <u>Id.</u> at

11

597-98.  The benefit claimed by the insured in <u>Walker</u>,
however, was a one-time payment for injuries she had sustained
in a collision, rather than a series of periodic payments like
those made under a policy of disability insurance.
Accordingly, <u>Walker</u> in no way forecloses the use of the
installment contract approach to determine the start of the
limitations period on a claim for discontinued disability
payments under New Hampshire law.[3]  <u>See</u> <u>Gen. Theraphysical</u>,
118 N.H. at 279 (where claim arose from agreement calling for
payment of money in installments, declining to apply rule that
statute began running when debtor first stopped making

---

[3]MetLife also argues that this court's decision in
<u>Rochester Lincoln-Mercury, Inc. v. Ford Motor Co.</u>, 2000 DNH
114 (D.N.H. May 10, 2000), "squarely rejected" the "logic"
underlying the installment contract approach.  Like <u>Walker</u>,
<u>Rochester</u> did not arise out of the breach of a contract to
render performance in separate installments, but the
defendant's refusal to perform a single act which allegedly
violated the parties' agreement, namely the refusal to allow
the plaintiff to purchase another Ford dealership.  What this
court rejected was the plaintiff's argument that the
limitations period on its claim did not start running until
Ford sold the dealership to another buyer, rather than when
Ford first communicated its refusal to let the plaintiff make
the purchase.  This argument, which the court identified as
seeking to start the limitations clock on a contract claim
when the plaintiff is damaged by the breach instead of at the
breach itself, differs from the installment contract approach,
which starts a <u>new</u> clock at every breach.  This court's
reasoning in <u>Rochester</u>, then, does nothing to undercut the
installment contract theory.

12

payments).

MetLife also relies on the decisions of two federal courts of appeal which refused to treat an insurer's cessation of regular disability payments as the breach of an installment contract for limitations purposes.  See Lang v. Aetna Life Ins. Co., 196 F.3d 1102, 1105 (10th Cir. 1999); Dinerstein v. Paul Revere Life Ins. Co., 173 F.3d 826, 828-29 (11th Cir. 1999).  Other federal courts have taken the same approach. See Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, 222 F.3d 643, 649 (9th Cir. 2000) (en banc); Armbruster v. K-H Corp., 206 F. Supp. 2d 870, 887-88 (E.D. Mich. 2002); Hembree ex rel. Hembree v. Provident Life & Accident Ins. Co., 127 F. Supp. 2d 1265, 1272 (N.D. Ga. 2000); Allen v. Unionmutual Stock Life Ins. Co. of Am., 989 F. Supp. 961, 966 n.3 (S.D. Ohio 1997).

In light of the depth of authority holding that a separate limitations period on an insured's claim to recover unpaid disability benefits runs from each missed payment, however, the court does not find these contrary decisions persuasive in determining New Hampshire law on this issue.[4]

---

[4]A number of these cases simply reject the rule out of hand without any accompanying analysis of its wisdom or lack thereof.  See, e.g., Wetzel, 222 F.3d at 649 (stating that the "'rolling' accrual rule is no longer the law of this circuit"

The court in  Dinerstein, applying Florida law to determine when the plaintiff's claim to recover allegedly underpaid disability benefits accrued, declined to treat the policy as an installment contract, holding instead that the limitations period commenced when the insurer made the first of its monthly payments in the reduced amount.  173 F.3d at 829.  The court took this approach because in its view "the issue is not whether the total amount due under a particular installment was fully paid, but rather whether it was owed in the first place."  Id. (footnote omitted).

Application of the installment contract rule, however, does not depend on the presence of a dispute over whether the periodic payments were "owed in the first place."  Courts have routinely treated the failure to make payments according to an agreed-upon schedule as the breach of an installment contract notwithstanding the defendant's position that it had no liability for any of those installments.  See, e.g., Jackson, 485 F. Supp. at 374-75 (treating former employer's cessation of pension contributions as breach of installment contract

because prior application was based on misunderstanding of state statute); Hembree, 127 F. Supp. 2d at 1272 (declining to follow approach because only supporting authority cited by plaintiff had been overruled by Wetzel); Allen, 989 F. Supp. at 966 n. 3 (rejecting invocation of rule as "flawed" without further discussion).

even though payments halted due to employee's alleged violation of non-compete agreement); Jensen, 415 N.W.2d at 560-61 (applying rule in suit over discontinued pension payments despite employer's argument that it could unilaterally terminate benefit). Moreover, courts which have taken the installment contract approach to policies of disability insurance have done so despite the insurer's contention that it had no obligation to continue periodic payments "in the first place" because the insured did not qualify for them under the policy. See, e.g., Everhart, 154 F.2d at 348; Columbian Mut., 185 So. at 227-28; Shaw, 163 S.W.2d at 378-79.

As these authorities suggest, nearly every action seeking to recover on a contract calling for periodic performances has its genesis at the point where the defendant stops rendering those performances through the first of what turns out to be a series of discontinued payments. If the Dinerstein court were correct that this first missed or otherwise deficient payment triggered the statute of limitations as to all future payments, the installment contract rule would never apply. Dinerstein's analysis, then, simply cannot be squared with existing New Hampshire law. Cf. Gen. Theraphysical, 118 N.H. at 279.

This court also considers <u>Lang</u> unpersuasive. There, the court rejected the insured's characterization of her policy as an installment contract because under that theory

> her claim would have an indefinite lifespan. Such a result would undermine the overriding purpose of a statute of limitations. Time limits are essential to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.

196 F.3d at 1105 (internal quotation marks omitted); <u>see also</u> <u>Armbruster</u>, 206 F. Supp. 2d at 888-89 (relying on <u>Lang</u> in declining to follow installment contract rule on the basis of the "policies underlying statutes of limitations").

As an initial matter, the court's statement that the installment contract approach gives an insured's claim for unpaid disability benefits "an indefinite lifespan" is not correct. To the contrary, the approach limits the insured's recovery to those individual payments as to which suit was brought before the limitations period expired. <u>See</u>, <u>e.g.</u>, <u>Everhart</u>, 154 F.2d at 356; <u>Moyer</u>, 113 F.2d at 981. Recognizing this principle, courts have rejected the <u>Lang</u> court's reasoning that the rule makes the statute of limitations on an installment contract "indefinite." <u>See</u> <u>Bay Area Laundry</u>, 522 U.S. at 210; <u>Nicholas</u>, 42 Fed. Cl. at 378-79. Due to its misunderstanding of the installment contract

16

approach, Lang overestimates the negative effect which the rule would have on the policies underlying statutes of limitations.

The Lang court also reached its assessment that the installment contract rule "would undermine the overriding purpose of a statute of limitations" without accounting for the fact that, despite such occasional criticism by litigants seeking to avoid it, the rule has become "universal." Gen. Theraphysical, 118 N.H. at 278; see also Nicholas, 42 Fed. Cl. at 379 n.3 (calling the rule "well-established"); 9 Corbin § 951 (noting that "there is much authority" for the rule). Indeed, courts have continued to adhere to the rule in the face of arguments similar to those which persuaded the Lang court. See Keefe, 755 A.2d at 474 (retaining rule over defendant's objection that it would "allow a single cause of action to re-appear, phoenix-like, every month"); Phoenix Acquisition Corp. v. Campcore, Inc., 612 N.E.2d 1219, 1222-23 (N.Y. 1993) (following rule despite recognition that it could interfere with statutes' promotion of certainty). As the Supreme Court has recognized, the logic behind the installment contract rule is that it requires a plaintiff to "wait until the [defendant] misses a particular payment before suing to

17

collect _that payment_."[5]  _Bay Area Laundry_, 522 U.S. at 552; _see also_ _Metromedia_, 655 A.2d at 1381 (to reject installment contract approach "would allow a claimant to trigger the statute of limitations upon presentation of a claim rather than having the existence of a claim trigger the statute of limitations").

In any event, regardless of the merits of the _Lang_ court's view as to the wisdom of the installment contract approach, this court is not free to disregard that approach in light of _Gen. Theraphysical_.  Indeed, the _Lang_ court's criticism of treating a disability insurance policy as an installment contract for limitations purposes, _i.e._, the limitations period potentially extends well beyond the defendant's rejection of the plaintiff's right to continued payments, is equally applicable to treating _any_ agreement as

_____

[5]The Supreme Court's holding in _Bay Area Laundry_ gives the court further pause in relying on _Lang_ and _Dinerstein_, which did not consider the case in rejecting the installment contract approach.  _Cf._ _Nicholas_, 42 Fed. Cl. at 376-77 (relying on _Bay Area Laundry_ to treat claim for military survivor benefits as suit on installment contract, overruling contrary Federal Circuit precedent); _but see_ _Miele_, 72 F. Supp. 2d at 100-101 (declining to extend _Bay Area Laundry_ to treat claim for underpayment of pension benefits as suit on installment contract).

an installment contract for limitations purposes.[6] The New Hampshire Supreme Court was presumably aware of that criticism when it decided Gen. Theraphysical, but nevertheless chose to follow the installment contract rule there. Furthermore, Gen. Theraphysical contains no indication that New Hampshire would refrain from following the installment contract rule in cases arising out of disability insurance policies and neither MetLife nor the authorities it cites offer any compelling reason to do so.

Accordingly, the court concludes that New Hampshire would

---

[6]For example, a lessee might agree to make a payment of $1,000 each month over the ten-year term of an equipment lease, but stop making those payments after one year, notifying the lessor that the equipment no longer performs as warranted. Under the rule followed in Gen. Theraphysical, the lessor is entitled to wait until the three-year anniversary of the date the last payment was due under the lease--twelve years from when the lessor stopped making payments--to recover the amount of that final payment. By that point, it is likely that evidence will have been lost, memories will have faded, and witnesses will have disappeared as to the merits of the lessor's claim, which presumably would depend on whether the equipment was, in fact, defective. In addition, the lessee is likely to be surprised by the lawsuit after having heard nothing from the lessor on the subject for more than a decade. (Of course, these disadvantages are mitigated by the fact that the lessor's claim is limited to the amount of the very last payment, or $1,000.) Despite the seeming undesirability of such a result, it is permitted by the installment contract rule, which has become widely accepted nonetheless, including by the New Hampshire Supreme Court.

treat an insurer's cessation of regular disability payments as the breach of an installment contract for statute of limitations purposes. A separate limitations period therefore runs as to each of the monthly payments which MetLife withheld from Pierce, beginning with the disbursement due in July of 1999. Because Pierce did not commence this action until August 20, 2003, however, she can recover only for those payments which would have come due within the preceding three-year period. The statute of limitations bars her claim to each of those payments allegedly due during the period beginning on July 10, 1999, and ending on August 19, 2000. See Gen. Theraphysical, 118 N.H. at 278.

Pierce, however, contends that the reach of the statute of limitations should not extend to any of the payments withheld by MetLife. She argues that equitable tolling should apply because she completely relied upon MetLife for "knowledge . . . about the appeals process and requirements for further legal action by its beneficiaries" and that MetLife had a "fiduciary duty to advise her of any statute of limitations issues."

"Conduct of a nature giving rise to an equitable estoppel may be sufficient to toll the running" of a statute of limitations under New Hampshire law. Guerin v. N.H. Catholic

20

Charities, Inc., 120 N.H. 501, 504 (1980); see also In re Kulacz, 145 N.H. 113, 116 (2000); Fuller, 2001 WL 920035, at *7. The application of equitable estoppel rests largely on the facts and circumstances of a particular case. Goodwin R.R. v. State, 128 N.H. 595, 600 (1986). As with other tolling doctrines, the party invoking equitable estoppel bears the burden of demonstrating its applicability. See Kulacz, 145 N.H. at 116.

Pierce does not claim that MetLife fraudulently concealed the fact that her benefits had been terminated. Cf. Lakeman v. LaFrance, 102 N.H. 300, 301 (1959) (recognizing statute could be tolled on medical malpractice claim where defendant misrepresented progress of plaintiff's recovery); Bowman v. Sanborn, 18 N.H. 205 (1846) (tolling limitations period on claim for partnership settlement where defendant concealed its true financial condition). Nor does she point to any other affirmative conduct which MetLife undertook "to persuade [her] not to file suit." Fuller, 2001 WL 920035, at *7 (declining to dismiss suit arising out of auto manufacturer's refusal to allow dealership to move where manufacturer forestalled suit by promising to move dealership to third location, but then failed to deliver); accord In re Cloutier Lumber Co., 121 N.H. 420, 422 (1981) (workers' compensation insurer estopped from

raising statute of limitations by its statements to plaintiff that benefits would resume if he failed in returning to work).

Instead, Pierce argues that estoppel should apply because MetLife provided "no assistance or warning that there was any statute of limitations that was going to expire." New Hampshire recognizes that "[u]nder certain circumstances, an estoppel may arise from silence or inaction as opposed to an actual misrepresentation. This form of estoppel, however, is limited to situations where the silent party has knowledge and a duty to make disclosure." Guri v. Guri, 122 N.H. 552, 555 (1982) (citation omitted); see also Concrete Constructors, Inc. v. Harry Shapiro & Sons, Inc., 121 N.H. 888, 893 (1981); Margolis v. St. Paul Fire & Marine Ins. Co., 100 N.H. 303, 308 (1956).

MetLife contends that it had no duty to advise Pierce that the limitations period was running on her claim for unpaid benefits. Although the New Hampshire Supreme Court has yet to consider this argument directly, it has refused to extend an insurer's duty to its insured beyond the obligation to handle third-party claims with reasonable care. Lawton v. Great Southwest Fire Ins. Co., 118 N.H. 607, 613-14 (1978). In addition, courts in other jurisdictions have explicitly held that an insurer has no duty to inform its insured that

22

the clock on a potential claim against the carrier is ticking. See, e.g., ALI, Inc. v. Generali, 954 F. Supp. 118, 120-21 (D.N.J. 1997); Foamcraft, Inc. v. First State Ins. Co., 606 N.E.2d 537, 539 (Ill. App. 1992); Blitman Constr. Corp. v. Ins. Co. of N. Am., 489 N.E.2d 236, 238 (N.Y. 1985); Jet Set Travel Club v. Houston Gen. Ins. Group, 639 P.2d 220, 222 (Wash. App. 1982); 16 Lee R. Russ et al., Couch on Insurance § 235:72 (3d ed. 1995); cf. Union Auto. Indem. Ass'n v. Shields, 79 F.3d 39, 42 (7th Cir. 1996) (under Indiana law, insurer's duty to inform claimant of deadline extends only to non-parties to policy).

In the absence of any contrary authority or argument from Pierce, the court concludes that MetLife's lack of responsiveness to Pierce's correspondence regarding its denial of continued benefits does not preclude MetLife from asserting the statute of limitations.[7] See LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 510 (1st Cir. 1998) (upholding

---

[7]Pierce relies on a United States Supreme Court case noting that equitable tolling has been permitted "'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" Young v. United States, 535 U.S. 43, 50 (2002) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Given the absence of any misconduct on MetLife's part, however, the principle recited in Young is inapposite.

rejection of equitable estoppel argument under Maine law where insurer "told [plaintiff] straightaway that it intended to stop paying benefits" and "then acted on that stated intention"). If anything, Pierce's letters (particularly those of February 3, 2001, and thereafter) demonstrate that she knew that the wise course was to consult a lawyer as to a possible claim against MetLife. Her reluctance to do so, while perhaps understandable, provides no basis for estopping MetLife from raising a limitations defense as to those payments allegedly due more than three years before Pierce ultimately brought suit. MetLife's motion to dismiss is therefore granted as to so much of Pierce's claim as seeks to recover any payment of disability benefits which would have been made before August 20, 2000.

## Conclusion

For the foregoing reasons, MetLife's motion to dismiss (document no. 7) is GRANTED to the extent it seeks dismissal of that portion of Pierce's claim which arises out of payments allegedly due under the policy before August 19, 2000. The motion is otherwise DENIED. Pursuant to Fed. R. Civ. P. 15(a), MetLife shall file a response to the complaint within ten days of the date of this order.

24

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 5, 2004

cc:  David L. Nixon, Esquire
     William D. Pandolph, Esquire